THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JACOB KOWALSKI, Defendant.

County Court, Kings County, May 21, 1936.

*Louis J. Gribetz,* for the motion.

*William F. X. Geoghan, District Attorney* [*Harry J. Walsh* of counsel], opposing.

FITZGERALD, J. The defendant was indicted by the February, 1936, grand jury, for grand larceny in the first degree.

The charge had previously been submitted to the November, 1935, grand jury, which found "no true bill."

This is a motion to dismiss the indictment on the grounds: (a) That the resubmission was unauthorized in that the affidavit on which the resubmission was based was insufficient in law; (b) that no new or additional evidence was presented to the February grand jury; (c) that the evidence was insufficient to warrant the indictment.

The charge was resubmitted to the February grand jury upon an affidavit that one Sam Eisler and one Charles Hemindinger had not testified before the November grand jury, and that the affiant (an assistant district attorney) believed that if their testimony was submitted to the grand jury it would be sufficient, together with the other testimony, to justify an indictment.

An examination of the testimony of the foregoing witnesses discloses it is in no sense new. At best it is merely corroborative of what other witnesses testified to when the matter was before the November grand jury.

The testimony of Sam Eisler is practically of no value. While the testimony of the People's witnesses as well as the testimony of the defendant (who appeared before both grand juries) is that $2,000 was given to the defendant in two checks of $1,000 each, his recollection was that there was one check for $2,000.

The testimony of Charles Hemindinger, a detective, was of a conversation with defendant. It differed in no material respect from the testimony of another detective, James F. McDonough, regarding a statement made by defendant, and from the testimony of defendant himself.

The evidence before both grand juries was practically identical; there was no new evidence before the February grand jury.

One grand jury is without the power to review the action of another grand jury in a particular case.

Where a charge has been submitted to a grand jury which refuses to indict, the charge may be resubmitted " as often as the court may so direct." (Code Crim. Proc. § 270.)

While that provision of the Code of Criminal Procedure seems to give unlimited power to submit charges again and again in the discretion of the court, a policy long prevailing as the result of judicial decisions has established definite limitations upon the power, which sound policy and justice alike demand should be recognized.

In *People* v. *Neidhart* (35 Misc. 191) it was said: " So far as appears, the evidence against these defendants was fully brought to the attention of the grand jury, who may, in a manner, be said to represent the ' common sense ' or consensus of opinion of the entire community. If the facts so proven against these defendants did not appear to them of sufficient importance to justify any prosecution, there and then should be the end of the matter. Such I understand to be the policy and meaning of our law, and the *raison d'etre* of the grand jury. To permit the district attorney, because he does not agree with the grand jury (and seemingly for no other reason) to continue resubmitting complaints to other grand juries until one can be found to agree with him, is to place in his hands a power of persecution that I am unwilling to sanction, and which, I am quite sure, he does not desire. The verdict or decision of the grand jury is justly entitled to great weight, and should not be lightly brushed aside or ignored." (See, also, *People* v. *Both*, 118 Misc. 414; *People* v. *Dziegiel*, 140 id. 145; appeal dismissed, 233 App. Div. 794.)

The evidence before neither grand jury warranted an indictment for grand larceny.

The defendant and the daughter of the complainant were contemplating marriage. He suggested to his prospective mother-in-law that if he had some money to invest in a business in which he was employed, he would be able to furnish his future bride with the luxuries to which she was accustomed. The mother gave the defendant $2,000 in two checks, both of which were indorsed by defendant to the concern he had mentioned. She subsequently gave him an additional $1,000 which he used with some additional money to purchase an automobile, title to which was placed in his *fiancée*.

In time a betrothal party was arranged. Invitations were obtained and sent out by the young lady, but the defendant did not issue any of those that were given to him. Thereafter a hall

was engaged for the wedding and the complainant, the prospective mother-in-law, paid a deposit thereon.

About this time there was "a rift in the lute;" defendant's ardor apparently cooled and a controversy resulted which upset the plans for the marriage and begot an estrangement between the parties.

It was then that the complainant demanded in a formal legalistic communication the return of the money given to defendant by her.

Wherein is there evidence of larceny? The evidence does not establish that the money was given as a *condition* of marriage with the daughter; rather it is clear that it was given in the hope of a union between defendant and the daughter. Even if it were proven that the money was paid as a *condition* of the marriage, that alone would not be sufficient to sustain an indictment for larceny.

Neither at common law nor under the Penal Law is the evidence sufficient to warrant an indictment for larceny.

For the several reasons herein set forth the motion is granted and the indictment dismissed.