THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* RUSSELL MORRELL, Defendant.

Supreme Court, Special Term, Rensselaer County, November 17, 1949.

*Earle J. Wiley, District Attorney (Edward J. Poland* of counsel), for plaintiff.

*E. Stewart Jones* for defendant.

MURRAY, J. Defendant, Russell Morrell, was indicted by a Supreme Court Grand Jury held in and for the County of Rensselaer on the 26th day of February, 1948, charged with the crime of criminal negligence in the operation of a vehicle resulting in death (Penal Law, § 1053-a). Such crime is a felony. He pleaded not guilty and was released in bail in the sum of $5,000. No trial or other disposition of such indictment has been made. It still is of record. Without leave by an order of the court for permission to resubmit (Code Crim. Pro., §§ 313, 317, 323, 270 and 400), the District Attorney for a second time presented the same evidence against defendant to another Supreme Court Grand Jury at the May, 1949, term of the Supreme Court held in and for the County of Rensselaer. Defendant was again indicted, charged with commission of the crimes of manslaughter in the first degree and in the second degree in violation of sections 1050 and 1052 of the Penal Law, also with the crime of leaving the scene of an accident, a misdemeanor, without reporting, in violation of subdivision 5-a of section 70 of the Vehicle and Traffic Law of the State of New York.

Arraigned on the second indictment defendant challenged its legal validity. He interposed a demurrer praying for judgment that he be discharged " from the said premises " specified in the second indictment.

The minutes of the testimony and evidence of the proceedings had before each Grand Jury has been submitted to the court. It appears therefrom on the 10th day of February, 1948, a very cold winter night, defendant at about 11:00 P. M. was operating and driving a Buick sedan automobile in a westerly direction on the outskirts of the city of Troy along a street known as Brunswick Road between Cross Street and Orchard Avenue. In his car, as passengers, were James J. Murphy, his wife, Elizabeth R. Murphy, and her sister, Mary Ursula McMeel. At approximately 11:30 P. M. a State trooper on his way for duty at the

Troop " G " barracks in the city of Troy driving his automobile in an easterly direction on the Brunswick Road saw an object which he thought was a rabbit and getting closer to it, saw it was a shoe covered with a black rubber. He stopped his car about twenty feet from the rubber and shoe and saw the form of a human being which he found was a man resting on a snow bank on the side of the road. He was alive and had suffered personal injuries and was taken to the Samaritan Hospital in Troy, New York, where he died on the morning of February 11, 1948. The injured person was identified as Vitus Popp.

While defendant was proceeding westerly on the Brunswick Road, on the right hand or north side of it, his car hit some object described by the passengers as a " thump " or a " bump ". Defendant proceeded about one half of a block, stopped, got out with Mr. Murphy who went back to see what the car had hit, but by reason of darkness Mr. Murphy was unable to ascertain. Defendant then drove his automobile to Ninth Street in Troy, the home of Mrs. McMeel where the car was examined by defendant and Mr. Murphy. It was discovered the right headlight was broken and a dent in the right front fender with some paint scratched off.

On February 11, 1948, defendant at 8:10 A. M. reported by telephone to the police of the City of Troy, New York, that he thought he had hit someone on the Brunswick Road the night before and wished to report the occurrence. He then drove his car to the police station, parked it in front of the station where it was examined by the police authorities who found the glass on the right headlight broken, the bulb broken and a dent in the right front fender. Defendant signed a statement in the presence of police officer Fake, in which he stated he thought he had struck a person or some object on the Brunswick Road the preceding night.

The same identical witnesses were sworn before each Grand Jury with the exception that Dr. Thomas Engster testified in place of Dr. Klinck as to the nature and extent of the injuries suffered by the deceased and a police officer, Kenneth Fake, assigned to the office of the District Attorney of Rensselaer County who testified relative to defendant reporting the accident to the police of the City of Troy. The second indictment returned by the May Grand Jury was not a superseding indictment.

Grave doubt exists that the procedure followed in indicting defendant for a second time is valid. There is no doubt but that defendant was placed in jeopardy by the first indictment. He had been duly arraigned on it, charged with violating section

1053-a of the Penal Law, criminal negligence in the operation of a vehicle resulting in the death of Vitus Popp, and had pleaded not guilty to such charge and had been admitted to bail. If a defendant has been put in jeopardy under a former indictment an order of the court is required to resubmit again to another grand jury. (*People* v. *Rosenthal,* 197 N. Y. 394, 401.) Inspection of the Grand Jury minutes of the testimony and evidence presented to the Grand Jury by the District Attorney as a basis for the second indictment clearly and irrefutably shows as matter of law the alleged offense committed by defendant, if any, was the operation of his automobile in a reckless, negligent and culpable manner whereby he struck and injured a pedestrian, and thereby caused his death. The Penal Law definitely describes such conduct as a criminal offense as follows:

" *A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death."* (Penal Law, § 1053-a. Italics mine.)

This law created a new and distinct crime. Prosecution and conviction of persons, driving automobiles or other vehicles in a reckless or culpably negligent manner, charging them with the crime of manslaughter was found by experience to be difficult and hampered by indictments charging such offenders with the crime of manslaughter. It was found that juries were most reluctant to convict persons of manslaughter in negligently and recklessly driving automobiles.

The expansion of the criminal law by enactment of section 1053-a of the Penal Law, was an inevitable concomitant of the development of modern civilization. Contacts between individuals have been greatly accelerated. The possibilities and methods whereby one individual can inflict injury upon others had increased enormously by the use of automobiles. The criminal law of the State of New York was, therefore, expanded in an attempt to keep pace with and ward off these many new possibilities of death and injury to individuals by the operation of automobiles. This generation has witnessed a multiplication of attempts through law to curb improper operation of motor vehicles and to deal with the increasing number of deaths and injuries caused thereby.

Law enforcement machinery under common law to punish persons for culpably and recklessly operating automobiles resulting in death was inadequate, insufficient and outmoded. The legal term " Manslaughter " was repellant to the average juror with reference to operation of automobiles recklessly. It con-

noted almost the crime of murder and thereby caused hesitation, confusion and ofttimes serious miscarriages of justice, hence the new penal offense section 1053-a, the crime of driving an automobile or other vehicle in a reckless or culpably negligent manner was born and enacted by the Legislature as adequate to cope with and meet the needs of present-day civilization.

The actualities of the enormous growth and movement of automobiles over streets and highways and the manner of their operation by reckless and culpably negligent persons was recognized by the Legislature as well as the insufficiency of the common law to meet a new menace and thus to guard the life, health and safety of persons lawfully using streets and highways, hence section 1053-a of the Penal Law was created.

The universal practice fortified by sections 313, 317, 323, 270 and 400 of the Code of Criminal Procedure, is that the power to resubmit charges to the grand jury rests with the court and is not reserved to the desire or wish of a district attorney. Concerning such power to resubmit any criminal charge for a second time to a grand jury the law is '' Such power should be sparingly and discriminately used. It is a practice that ought not to be encouraged, nor granted *pro forma*.'' (*People* v. *Neidhart*, 35 Misc. 191, 192.) As previously stated the facts before the second Grand Jury were substantially the same as presented to the first Grand Jury. Nothing new was added. If the facts presented to the first Grand Jury did not appear to it of sufficient gravity to justify prosecution other than that for the crime of criminal negligence in operation of a vehicle causing death, that in common sense should have been the end of the matter. To permit a district attorney because he does not agree with prior findings of a grand jury to resubmit on his motion the same facts to other grand juries until an indictment is found suitable to him, is to place unbridled power in the hands of a prosecutor, a policy which I am unwilling to accept or sanction. '' The verdict or decision of the grand jury is justly entitled to great weight, and should not be lightly brushed aside or ignored.'' (*People* v. *Neidhart, supra,* p. 192.)

'' One grand jury is without the power to review the action of another grand jury in a particular case.'' (*People* v. *Kowalski,* 159 Misc. 493, 495.)

No reason good, bad or indifferent has been furnished or submitted by the District Attorney why the first Grand Jury failed in its sworn duty to indict defendant for the crime which in their considered judgment he committed. Moreover, the District Attorney was their legal adviser, and the presumption is

that the District Attorney did advise such Grand Jury of what crime or crimes defendant committed.

The court concurs and agrees with the pertinent reasoning and language expressed in *People* v. *Neidhart* (*supra,* p. 192, FOSTER, J.) with reference to submitting for a second time to another grand jury a charge which has once before been considered by a preceding grand jury.

" So far as appears, the evidence against these defendants was fully brought to the attention of the Grand jury, who may, in a manner, be said to represent the ' common sense ' or consensus of opinion of the entire community. If the facts so proven against these defendants did not appear to them of sufficient importance to justify any prosecution, there and then should be the end of the matter. Such I understand to be the policy and meaning of our law, and the *raison d'etre* of the grand jury. To permit the district attorney, because he does not agree with the grand jury (and seemingly for no other reason) to continue resubmitting complaints to other grand juries until one can be found to agree with him, is to place in his hands a power of persecution that I am unwilling to sanction, and which, I am quite sure, he does not desire. The verdict or decision of the grand jury is justly entitled to great weight, and should not be lightly brushed aside or ignored."

I so hold with reference to the determination of the February Grand Jury which indicted defendant for the crime of criminal negligence.

Moreover, the Attorney-General of the State of New York has rendered an opinion that persons guilty of reckless driving culpably in a negligent manner of a vehicle resulting in death should be charged with the offense under section 1053-a of the Penal Law, criminal negligence, and not with manslaughter under section 1049. (1936 Atty. Gen. 141.)

This court recognizes a wide latitude should be given a district attorney in the prosecution of crime, nonetheless, a court has the sworn duty and obligation to prevent harassment to defendants by procurement of successive indictments based upon the same facts.

It is the considered judgment of this court that defendant was placed in jeopardy by the first indictment and further because of the failure of the People to obtain an order to resubmit was fatal to the validity of the second indictment and therefore the demurrer to the second indictment is allowed and such indictment is dismissed.

This does not mean defendant goes " Scot Free ". He must answer to the first indictment by trial and if guilty convicted. If not guilty acquitted. He should be brought to trial promptly to further the interests of justice.

Law briefs were to be furnished the court by the attorneys for the respective parties as to the questions involved herein, but were never submitted, hence the delay of this decision.

Submit order in accordance herewith.