Aaron E. Koota, J.
This is a motion by defendant for an order permitting him to inspect the minutes of the G-rand Jury which presented the indictment herein. There is an additional prayer for the granting of other and further relief.
This indictment in substance accuses the defendant of criminally negligent homicide. (New Penal Law, § 125.10.) (New Penal Law will hereinafter be referred to as N.P.L.) It is charged inter alia therein that on April 28, 1968, defendant allegedly operated an automobile at a high, reckless, dangerous and unlawful rate of speed and in the course thereof, passed a red light and struck one, Angela Palazzo, a pedestrian, inflicting injuries upon her which resulted in her subsequent death.
N.P.L. (§ 125.10) provides that a person is guilty of the crime of “ criminally negligent homicide ” when, with criminal negligence, he causes the death of another person. The term “ criminal negligence ” is specifically defined in N.P.L. (§ 15.05, subd. 4) as follows: “A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The rislc must be of such nature and degree that the failure to■ perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.” (Emphasis supplied.)
*163 Prior to the enactment of the New Penal Law (eff. Sept. 1, 1967) the culpable negligence of any person not constituting murder in its first or .second degree or the first degree of manslaughter resulting in, but without design to effect death, constituted the crime of manslaughter in the second degree (former Penal Law, § 1052, subd. 3). It would appear under the prior law that an individual whose automobile, driven by him in a culpably negligent manner, struck another, resulting in the latter’s death, could be prosecuted for manslaughter in the second degree. However, ‘1 The legal term 1 Manslaughter ’ was repellant to the average juror with reference to operation of automobiles recklessly. It connoted almost the crime of murder and thereby caused hesitation, confusion and ofttimes serious miscarriages of justice”. (People v. Morrell, 196 Misc. 1016, 1019-1020; People v. Decina 2 N Y 2d 133, 147.) Consequently, in 1936 the Legislature enacted section 1053-a of the former Penal Law which refers specifically to criminal negligence in the operation of a vehicle resulting in death. This statute provided that: “ A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death.”
It may be observed that subsequently thereto sections 1053-c and 1053-e of the former Penal Law were enacted concerning criminal negligence while engaged in hunting or in the operation of a vessel resulting in the death of another. The essence of the three crimes (former Penal Law, §§ 1053-a, 1053-c, 1053-e) lay in the ‘ ‘ reckless ” or ‘1 culpably negligent ’ ’ manner in which the automobile, the firearm or the vessel was employed. The ultimate crime in each of these sections was ‘ ‘ criminal negligence ’ ’ which consisted of ‘ ‘ reckless ” or “ culpably negligent ” conduct.
To overcome in part the problem .suggested in People v. Morrell (supra) the punishment for each of these crimes was imprisonment for a term not to exceed 5 years or by a fine, whereas the punishment for manslaughter in the second degree was a prison term not exceeding 15 years or by a fine. (Former Penal Law, §§ 1053, 1053-b, 1053-d, 1053-f.)
The terms “ reckless ” and “ culpably negligent” in their very nature are not susceptible of precise delineation or application in view of the “ unforeseeable, infinite variety of circumstances to which they might apply.” (Burke, J., in People v. Eckert 2 N Y 2d 126, 130.) It might also be observed that the terms “ culpable negligence ”, “ criminal negligence ” and “ recklessness ” appear to be interchangeable.
*164 The problem, thus posed invited recodification and clarification of vehicular homicide. Therefore, the New Penal Law effective September 1, 1967 contains section 125.10 upon which the indictment herein is predicated declaring that a person who, with criminal negligence, causes the death of another is guilty of the crime of criminally negligent homicide. This crime is designated as a Class E Felony, the maximum penalty for which upon conviction is a term of imprisonment not exceeding four years. 'Section 125.10 would appear also to include the crimes under, not only section 1053-a of the former Penal Law, but also those designated in sections 1053-c and 1053-e and these three sections were, therefore, not included specifically in the New Penal Law.
We have observed that criminal negligence is defined as the failure to perceive a substantial and unjustifiable risk, which risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. (N.P.L., § 15.05, subd. 4.)
Where, however, the conduct of defendant is of a more serious nature than the failure to perceive the risk and is such as may be characterized as “ reckless ” the degree of crime is raised to manslaughter in the second degree as defined in section 125.15 .and is a Class C Felony punishable by a maximum term of imprisonment of 15 years.
This dichotomy in classification of vehicular homicide thus separates passive or negative negligence (failure to perceive a substantial risk, etc.) from the more aggravated degree of recklessness.
The statutory distinction between these two degrees of misconduct is contained in section 15.05 (subds. 3, 4) of the New Penal Law and basically lies in the awareness of a substantial and unjustifiable risk. Failure to perceive such a risk is criminal negligence whereas awareness and perception of such risk and consciously or deliberately by conduct to invite the consequences thereof is recklessness. In the one case where such conduct results in death it is “ criminally negligent homicide”. In the other, it is “manslaughter in the second degree ”.
But in lessening the degree of proof required to convict for criminally negligent homicide, the Legislature did not intend to equate criminal liability for conduct resulting in death with civil responsibility.
A departure from the standard of care exercised by the ubiquitous reasonable man may cast a defendant in damages *165 in a civil suit posited upon his negligence where death ensues, but to be criminally actionable (under N.P.L., § 125.10) it is not any variance from the standards of reasonable care upon which criminal liability may be predicated but the risk which the accused fails to perceive must be substantial and unjustifiable and of such nature and degree that the failure to perceive it constitutes a gross deviation from such standards.
I believe that case law interpreting pre-existing statutes on manslaughter in the second degree (former Penal Law, § 1052, subd. 3) and criminal negligence (former Penal Law, § 1053-a) are apposite and may appropriately be considered here in discussion of criminal negligence, and failure to perceive a substantial and unjustifiable risk.
I do not discern a legislative intent in N.P.L. (§ 125.10) to create a new and theretofore unknown crime or to place the stigma of venality upon theretofore benign or venial conduct but rather the purposeful demarcation between that type of negligence which lies in the failure to perceive a risk from that where the risk is known and appreciated but nevertheless deliberately assumed. This distinction was not recognized in section 1053-a of the former Penal Law.
In People v. Eckert (supra) the defendant was indicted for committing the crime of criminal negligence in violation of section 1053-a of the former Penal Law resulting in death, when he lost consciousness and control of an automobile during an epileptic seizure with prior knowledge that he was subject thereto and in the course thereof struck a pedestrian resulting in death. Judge Burke at page 130 of the opinion establishes certain guidelines or standards of “ reckless ” and “ culpable ” determination as follows: “ On various occasions we have defined them as meaning a 1 disregard of the consequences which may ensue from the act, and indifference to the rights of others ’ (People v. Angelo, [246 N. Y. 451] supra, p. 457; People v. Grogan, 260 N. Y. 138; 144; People v. Bearden, 290 N. Y. 478, 482, supra). On occasion we have also cautioned that ‘ A distance separates the negligence which renders one criminally liable from that which establishes civil liability ’ (People v. Rosenheimer, 209 N. Y. 115, 123; People v. Bearden, supra, p. 483); it is negligence which 1 reached beyond the bounds of lack of skill and foresight where civil liability begins to a point where criminal liability is imposed ’ (Brown v. Shyne, 242 N. Y. 176, 183); it ‘ is therefore something more than the slight negligence necessary to support a civil action for damages ’ (People v. Angelo, supra, p. 457). By this we meant, as the terms obviously import and an analysis of the decisions *166 indicate, that ordinary negligent conduct — that is, negligent conduct arising from carelessness, inadvertence, lack of skill, competence or foresight — would not be a sufficient basis to predicate a conviction where reckless or culpably negligent conduct was required. This is why a conviction under this statute cannot be based solely on proof of excessive speed (People v. Bearden, supra; People v. Walker, 296 N. Y. 740).”
In Matter of Jenson v. Fletcher (277 App. Div. 454, affd. 303 N. Y. 639), the court said at pages 457 and 458: “It is recognized in this State that ‘ gross negligence ’ is something more than ‘ ordinary negligence ’. ‘ Gross ’, 1 culpable ’, ‘ criminal ’ and ‘ reckless ’ are the equivalent of each other in meaning and sense when applied to negligence. Such negligence is defined as ‘ disregard of the consequences which may ensue from the act, and indifference to the rights of others. ’ (People v. Angelo [246 N. Y.] p. 457; People v. Grogan, 260 N. Y. 138.) Such meaning is the same whether applied in manslaughter, negligently causing death, reckless driving ”.
(See, also, Matter of Coniber v. Hults, 15 A D 2d 252, 255, 256; People v. Gardner, 255 App. Div. 683, 685; People v. Pace, 220 App. Div. 495; Dalton v. Hamilton Hotel Operating Co., 242 N. Y. 481.)
In People v. Angelo (246 N. Y. 451, 457) the Court of Appeals noted that, “ ‘ Culpable ’ negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others.”
In Weld v. Postal Tel. Cable Co. (210 N. Y. 59) at page 72: “ The eases cited recognize a distinction between ordinary and gross negligence, from which it may be said that gross negligence is the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence. In other words, the act or omission must be of an aggravated character as distinguished from the failure to exercise ordinary care.”
Therefore, to predicate criminal responsibility there must be a showing of more than mere negligence or slight negligence. The risk must be substantial and unjustifiable and of such nature and degree that failure to perceive it constitutes a gross deviation from the standards of reasonable care.
A review of the evidence contained in the minutes of the Grand Jury upon which the indictment herein is based leads to the ineluctable conclusion that such evidence as a matter of law is insufficient to support the conclusion that the defendant *167 failed to perceive a substantial and unjustifiable risk of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. Resolving all possible inferences from the evidence in favor of the validity of the indictment, all that appears in the minutes of the Grand Jury nevertheless is that the defendant was operating his automobile at an excessive rate of speed, passed a red light and struck and killed Angela Palazzo. There are no other circumstances elicited which might be relevant to the nature of the unperceived risk such as the condition of the automobile which the defendant was operating, or its brakes, or the condition of the defendant, as to whether he was intoxicated, his ability to drive an automobile, his experience in such operation or lack thereof or the general condition of traffic at the time of the occurrence.
The evidence before the Grand Jury, even though unexplained and nneontradicted, would not in my opinion justify conviction by a trial jury (Code Crim. Pro., § 251; People v. Sweeney 213 N. Y. 37; People v. Howell, 3 N Y 2d 672).
The motion for an inspection of the Grand Jury minutes is granted and this indictment is dismissed.