584                    BELK *et al. v.* THE PEOPLE.

JOHN BELK *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 16, 1888.*

1. CRIMINAL LAW—*reckless or negligent driving on the highway—liability criminally for results.* Every person driving upon the public highway is under a legal duty to observe, in the control and management of his team, the exercise of reasonable care to prevent injury to others, and he is criminally responsible for the neglect or willful failure to perform that duty. To create this responsibility, however, the law must cast upon the persons sought to be charged, the legal obligation to do the act or perform the service the omission of which is alleged to be the direct cause of the injury.

2. If persons having the control and management of horses attached to a vehicle, in which they are riding along a highway behind another conveyance, knowing the danger of a collision with the forward conveyance and the probable consequences flowing therefrom, recklessly and negligently, or wantonly and willfully, allow their horses to run down and collide with the other vehicle, without using such means as are reasonably at their command to prevent the same, they will be held criminally responsible for the result of their negligence or willful omission of duty. If it is the cause of death they may be convicted of manslaughter.

3. SAME—*injury resulting from inevitable accident.* But if they are not guilty of negligence, and the collision is the result of inevitable accident, or resulted from their horses becoming unmanageable without their fault, and uncontrollable by the exercise of proper care, there can be no criminal liability.

4. SAME—*whether negligence the proximate cause of injury.* If a party in a wagon, on a highway, through negligence and carelessness, or willfully and wantonly, allows his team to become unmanageable, whereby it collides with another wagon, and causes the team of the latter wagon to run away and throw a person therefrom, inflicting injuries from which he dies, there being no interposition of any human will acting independently of the first named party, or any extraordinary natural phenomena to produce the result, the jury may very properly find that the negligence was the proximate cause of the death.

5. In such case, it can make no difference whether the driver of the team after which the person injured was riding, was guilty of negligence in not controlling or failing to control his team after the collision, or not. But if the driver of such team, instead of being merely negligent, had done

some act contributing to the running away of his horses, or had driven upon a bank, whereby the carriage was overturned and the deceased was thrown out, it might justly be said that the injury or death was attributable to the act of the driver.

6. SAME—*of an instruction in such case, not based on evidence.* On the trial of parties for manslaughter, in running their team into the vehicle of another, and thereby causing the team attached to the vehicle to run away and cause the death of the occupant, there was no evidence that the defendants did anything to urge their team forward or cause it to collide with the other one, but the counsel for the prosecution, in argument to the jury, stated that he could have proved that fact if a certain witness had been present. The court instructed the jury, that if they believed, from the evidence, that the defendants, unlawfully, etc., did drive and urge a certain span of horses to so rapid a pace that they could not control them, and in consequence of the careless and reckless driving of the horses ran into another wagon, etc., whereby the death, etc., occurred, the defendants would be guilty of manslaughter: *Held,* that under the circumstances of the case such instruction was erroneous.

WRIT OF ERROR to the Circuit Court of JoDaviess county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. D. and T. J. SHEEAN & McHUGH, for the plaintiffs in error:

Involuntary manslaughter is defined by the statute, as the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act in an unlawful manner, which probably might produce such a consequence. Starr & Curtis' Stat. Crim. Code, sec. 193.

Plaintiffs in error are not responsible for the negligence of Richard Reed. There was no concert between them and Richard Reed. The direct cause of the death of Ann Reed was, that she was thrown out of Richard Reed's hack by his runaway team. Between the cause of death and any act of plaintiffs in error there was interposed the carelessness of Richard Reed. The result was produced by the interposition of an independent human will not acting in concert with plaintiffs in error. Wharton on Crim. Law, (7th ed.) point 3 preceding sec. 751, and sec. 751, at p. 698; *People* v. *Rockwell,* 39 Mich. 503.

The court erred in instructing the jury, for the People, especially the sixth, for want of any evidence to support the hypothesis that John Belk urged his horses to so rapid a pace that he could not control them.

Mr. GEORGE HUNT, Attorney General, and Mr. W. W. WAGDIN, State's Attorney, for the People.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The plaintiffs in error, John Belk, John Hill and George Williams, with George Belk, were jointly indicted, in the Jo-Daviess circuit court, for the murder of Ann Reed, the indictment charging in the various counts, in varying forms, that the murder was committed by the defendants, by willfully, recklessly, negligently, wrongfully and feloniously driving a team of horses hitched to a wagon, upon and against a wagon in which the deceased was riding, thereby causing the horses attached to the wagon in which she was so riding, to run away, thereby throwing said Ann Reed upon the ground, whereby she received wounds and injuries from which she died the following day. A trial resulted in an acquittal of said George Belk, and a verdict of guilty of manslaughter as to plaintiffs in error, and fixing their punishment at confinement in the penitentiary at one year each. Motions for new trial and in arrest were severally overruled, and sentence pronounced by the court upon the verdict.

The facts immediately connected with the killing of Mrs. Reed, in reference to which there is little or no controversy, are as follows: On the 5th day of July, 1886, a celebration of the fourth of July was held in a grove about a half mile from the village of Elizabeth, in Jo Daviess county. The grove was a quarter of a mile from the public highway, and was reached through a lane about one rod wide and fifty rods long, extending from the road into the fields in which the grove

was situated. This lane, ordinarily closed by gates at each end, was on this day thrown open and used by the public. About six rods from the gate nearest the grove was a hollow or depression crossing the lane, the descent into which, by the road, was quite steep, and at this point, owing to the unevenness of the surface of the land, a team could not be driven aside to permit another to pass. About six o'clock P. M. the deceased, with others, started homeward, through this lane, in a spring wagon or "hack" drawn by two horses, driven by her son, Richard. About the same time, plaintiffs in error, in company with George Belk, also started from the grove, in a like vehicle, also drawn by two horses driven by the defendant John Belk. At the time the latter entered the narrow lane the former was some six rods in advance, and in plain view. About the time of so entering the lane, the horses driven by Belk began to run, and ran into and against the wagon in which the deceased was riding, breaking the end-gate and the back of the seat. The collision occurred just as the forward conveyance was descending the declivity into the hollow mentioned. The result was that the horses attached to the vehicle in which Mrs. Reed was riding became unmanageable, and ran away, whereby she was thrown violently to the ground, and was injured so that she died the next day.

Some question is made whether the collision was the proximate cause of the team running away, and of the injury and death of Mrs. Reed; but it is enough to say, the evidence was sufficient upon which to base the finding of the jury in that respect. The question was submitted under proper instructions, and there is no ground for disturbing the verdict for that reason. There was direct causal connection between the collision and the death of the deceased. Between the acts of omission or commission of the defendants, by which it is alleged the collision occurred, and the injury of the deceased, there was not an interposition of a human will acting independently of the defendants, or any extraordinary natural

phenomena, to break the causal connection. It may be fairly said that what followed the colliding of the defendants' team with the wagon in which the deceased was riding, was the natural and probable effect of the collision, and the collision was in consequence of the manner in which the team of the defendants was controlled. It can make no difference whether the driver of the team after which the deceased was riding, was guilty of negligence in not controlling or failing to control his team after the collision. It may be that persons standing by, or the driver, might, by the exercise of diligence and care, have checked the horses, and thereby prevented the final catastrophe; but because they did not do so, and were derelict in moral or even legal duty in that regard, will not release defendants from the responsibility of their wrongful act or omission of their legal duty. If the driver, instead of being negligent, as is claimed, in controlling his team, had done some act contributing to the running away of his horses, or driven upon a bank, whereby the carriage had been overturned and the deceased thrown out, or the like, it might justly be said that it was the act of the driver, and not of the defendants, to which the death of the deceased was legally attributable. Wharton on Crim. Law, 341, *et seq.;* Roscoe on Crim. Ev. 700, *et seq.*

The case made by the evidence fairly presented the question for determination, as to whether the collision was the result of the reckless and wanton failure of the plaintiffs in error, or some one or more of them, to control and manage the team of which they were in charge, or was the result of unavoidable mischance or accident. This record shows that in approaching the gate and entering the lane, the horses of the defendants were being driven in a walk or slow trot, and apparently under perfect control. About the time they entered the lane the horses started to run, and continued to do so until the wagon in which the deceased was riding was struck, as before mentioned; that then and from there on, said horses were again apparently under perfect control. The evidence fails to

show that the horses were started or urged into a high rate of speed by any act or word of the defendants, or either of them. There is great conflict in the evidence as to whether or not said horses were unmanageable, and ran despite the efforts of the defendants John Belk and Hill to control them, or whether they were permitted to run and collide with the wagon of the deceased without any attempt on the part of defendants, or either of them, to control said horses.

It is insisted by counsel for the defendants, that as there is a failure to show that they were active in inducing their horses to run at the place indicated, no criminal responsibility attaches to the defendants. This we think a misapprehension of the law. There can be but little distinction, except in degree of criminality, between a positive intent to do wrong and an indifference whether wrong is done or not. It is therefore said, "carelessness is criminal, and within limits supplies the place of the direct criminal intent." (1 Bishop on Crim. Law, 313; *Commonwealth* v. *Rodes,* 6 B. Mon. 171; Roscoe on Crim. Ev. *supra.*) Every person driving upon the public highway, or in other place frequented by others, is bound to exercise reasonable care and caution to prevent injury to others. The law casts upon him the legal duty of observing such care and caution as is exercised by reasonable and prudent men under like circumstances. As a rule, the care required is to be proportioned to the danger. Hence, driving rapidly in an open country highway may not be negligence, while the same character of driving in a thronged street or thoroughfare, or where there is known hazard to others, may be negligence in the highest degree. Wharton on Crim. Law, secs. 353-355.

We have seen that every person driving upon the public highway is under a legal duty to observe, in the control and management of his team, the exercise of reasonable care to prevent injury to others. Every person is criminally responsible for the neglect or willful failure to perform that duty. To create this responsibility, however, the law must cast upon

the persons sought to be charged, the legal obligation to do the act or perform the service the omission of which is alleged to be the direct cause of the injury. (Wharton on Crim. Law, 229, *et seq.*) If, therefore, the defendants, or such of them as had the control or management of the horses attached to the vehicle in which they were riding, knowing of the danger of the collision, and the probable consequences flowing therefrom, recklessly and negligently, or wantonly and willfully, permitted the horses to run down and collide with the vehicle of the deceased, without using such means as were reasonably at their command, to prevent the same, they should be held penally responsible for the result of their negligence or willful omission of duty. (Archbold on Crim. Proc. 9; Bishop on Crim. Law, sec. 314.) The case, in this view, should have been submitted to the jury by the trial court.

It is strenuously contended, and there is much proof tending to show, that after the horses of defendants had entered the lane, they became frightened and unmanageable, and that the collision was without fault on the part of accused, or either of them,—that they used every endeavor to prevent the same, but without avail. If the defendants were not guilty of negligence, and the collision was the result of inevitable accident, or resulted from their horses becoming unmanageable, without fault of the defendants, and uncontrollable by the exercise of proper care by the defendants, there would be no criminal liability. It is not our purpose, however, to discuss the evidence pertaining to this branch of the case, for the reason that the plaintiffs in error may again be placed upon trial for the crime of manslaughter, under this indictment. As we have seen, there is a total want of evidence in this case showing that anything was said or any act done by the defendants, or either of them, to induce their team to run away or become unmanageable, or that might have produced that result, and all that can be claimed by the prosecution upon this record is, that

they failed to perform the legal duty of using reasonable care to check the team and prevent the collision.

The court, by the sixth and eighth instructions given for the People, told the jury, that if they believed, from the evidence, that defendants, etc., unlawfully, recklessly and carelessly did drive and urge a certain span of horses to so rapid a pace that they could not control them, and in consequence of the careless, reckless and unlawful driving, the horses ran into another wagon, etc., whereby the death, etc., of Ann Reed occurred, the defendants would be guilty of the crime of manslaughter.

It is to be remarked that the only place in this record in which any reference is made to the fact that defendants were urging, or doing any act tending to urge, their horses into a rapid gait after reaching the lane, is to be found in these instructions, and in the remarks of counsel, in argument, to the jury. One of the counsel, in argument, said to the jury that the reason why the prosecution had failed to prove that the defendants were whipping their horses just as they struck Reed's hack, was because of the absence of the witness Herman Praegar; that if the witness Praegar had been present, the prosecution would have proved by him that as the defendants were driving along and running into Reed's hack, they were whipping their horses. It is true, it does not appear that these remarks of counsel were objected to, or the attention of the court called to them by the defendants or their counsel; but, followed immediately, as they were, by the instructions referred to, having for their sole foundation these remarks of counsel, or none at all, gave emphasis to them, and must have been prejudicial to the defendants. It is a doctrine so well established in this court that instructions must be based upon the evidence, that no authorities are required to be cited in support of it. To instruct the jury that if they believed, from the evidence, that the defendants were carelessly and recklessly urging their horses, was for the court to say, in substance, to the jury, that in the view of the court there was some evidence

upon which such finding might be predicated, whereas, it is totally without foundation in this record. This was manifest error, and necessitates the reversal of the judgment of the circuit court.

The judgment will accordingly be reversed, and the cause remanded to the circuit court of Jo Daviess county for further proceedings.

*Judgment reversed.*