THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. MICHAEL ANGELO, Respondent.

Crimes — manslaughter in second degree — trial — charge — meaning of words " culpable negligence " as used in section 1052 of Penal Law defining manslaughter in second degree — erroneous refusal to charge that slight negligence was not culpable.

1. " Culpable " negligence within the meaning of section 1052 of the Penal Law, defining manslaughter in the second degree, is something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others. Under a given state of facts, whether negligence is culpable is a question of judgment, ordinarily for the jury, but it may become a question of law. If the negligence is so slight as not to reach the required standard the court should advise an acquittal of the accused.

2. Upon trial of an indictment charging defendant with manslaughter in the second degree, in having killed a person through his culpably negligent operation of an automobile, a refusal of the trial judge to charge that slight negligence was not culpable and leaving it to the jury to say whether it was or was not, was substantial error, where the evidence presented a question of fact as to whether defendant was guilty of culpable or at most of slight negligence betokening no recklessness or disregard of consequences.

*People* v. *Angelo*, 219 App. Div. 646, affirmed.

(Argued October 11, 1927; decided November 22, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 9, 1927, which reversed a judgment rendered at a Trial Term for the county of

Erie upon a verdict convicting the defendant of the crime of manslaughter in the second degree and granted a new trial.

*Guy B. Moore*, District Attorney (*John J. Kane* of counsel), for appellant. The trial court's charge on the subject of " culpable negligence " did not prejudice the substantial rights of the defendant and presents no reversible error. (*Noonan* v. *Luther*, 119 App. Div. 703; *State* v. *Horner*, 266 Mo. 109; *People* v. *Buddensieck*, 4 N. Y. Cr. Rep. 265; 103 N. Y. 501; *People* v. *Noblett*, 244 N. Y. 355; *People* v. *Gowasky*, 244 N. Y. 451; *Hun* v. *Cary*, 82 N. Y. 71.)

*Michael J. Montesano* and *Joseph C. Bell* for respondent. The court committed reversible error in its charge to the jury upon the subject of " culpable negligence," in effect permitting the jury to form its own definition of the term. (*McDonald* v. *The Tom Lisle*, 48 Fed. Rep. 690; *McClain* v. *Brooklyn*, 116 N. Y. 459; *Martin* v. *Hertzog*, 228 N. Y. 164; *People* v. *Rosenheimer*, 209 N. Y. 115; *People* v. *Buddensieck*, 4 N. Y. Cr. Rep. 230; *People* v. *Gaydica*, 122 Misc. Rep. 31; *Brown* v. *Shyne*, 242 N. Y. 176; *People* v. *Pace*, 220 App. Div. 495; *People* v. *Barnes*, 182 Mich. 179; *People* v. *Harris*, 214 Mich. 145; *People* v. *Adams*, 289 Ill. 339.) The court committed reversible error in charging the jury in effect that the defendant was guilty of manslaughter without regard to proximate cause provided he was guilty of negligence contributing in any degree to the accident, and in further charging the jury in effect that the defendant was guilty of manslaughter unless the accident was caused solely and alone by the negligence of the driver of the other car. (*People* v. *Jackson*, 125 App. Div. 873.) The court committed reversible error in charging the jury as a matter of law that the defendant was guilty of manslaughter if he violated section 14 of the General Highway Traffic Law without reference to whether such

violation, if any, was the proximate cause of the accident. (*People* v. *Rockwell,* 39 Mich. 503; *People* v. *Barnes,* 182 Mich. 179; *State* v. *Campbell,* 82 Conn. 671.)

ANDREWS, J. At a street intersection there was a collision between two automobiles, a passenger in one being killed. The driver of the other has been convicted of manslaughter in the second degree. The judgment was reversed by the Appellate Division because it was thought that erroneous instructions were given to the jury as to the meaning of the words " culpable negligence." Whether this is so or not requires an analysis of two sections of the Penal Law.

Any killing is homicide — either murder or manslaughter — unless the act is excusable or justifiable. With the latter exception we do not here deal. It is excusable, however, if the homicide is committed by accident or misfortune in doing a lawful act by lawful means with ordinary caution without unlawful intent. (Penal Law, sec. 1054.) What is meant by " ordinary caution " is defined by section 1052. Where the killing is the result of " any act, procurement or culpable negligence "— not constituting the crime of murder or manslaughter in the first degree — the defendant is guilty of manslaughter in the second degree. " Ordinary caution " must mean the absence of culpable negligence, otherwise a gap might exist — a case of homicide not excusable under section 1054, yet not criminal under the definitions of sections 1044, 1046, 1050 and 1052. But section 1043 is intended to include every species of homicide. The ultimate question, therefore, is as to the intent of the Legislature in using the two words " culpable " and " negligence."

" Culpable " has been defined as " guilty, criminal, deserving punishment or condemnation," and more mildly as " deserving blame or censure, blameworthy." (Oxford Dictionary.) It may be said that any negligence resulting in injury to another is blameworthy.

Were this the meaning of the Legislature the use of the adjective is superfluous. In truth, however, our criminal law has an historic background. Criminal negligence is no new invention. We did not first use the word culpable.

A sketch of the common law as to homicide may be found in Stephen's History of the Criminal Law (Vol. 3, p. 1). He says Bracton distinguishes between casual homicides caused by a lawful act without or with negligence and casual homicide caused by an unlawful act. In the first of the three cases he believed no offense was committed. As time went on the rules as to homicide became fixed. About 1762 Sir MICHAEL FOSTER defines homicide *per infortunium* as death caused unintentionally in doing a lawful act with due caution or with only slight negligence. Stephens sums up the common-law rule in his Digest of the Criminal Law (p. 169): " No one is deemed to have committed a manslaughter only because he has caused the death * * * of another by negligence which is not culpable. What amount of negligence can be called culpable is a question of degree for the jury, depending on the circumstances of each particular case. An intentional omission to discharge legal duty always constitutes culpable negligence."

Abundant support of this proposition is found both in text-books and in opinions. Chapter 39 of Hale's Pleas of the Crown discusses involuntary homicide and a note at page 475 says that the test of criminal responsibility is " whether the conduct of the accused is contrary to law or not being so forbidden was so gross, negligent or violent as necessarily to produce the belief that the act which * * * caused death was such an act or was done in such a manner as to involve moral impropriety." Some similar statements are found in East's Pleas of the Crown and in Russell on Crimes. And in Wharton on Homicide we find the statement that to warrant a conviction of manslaughter there must be criminal intent or negligence so gross as to imply it (p. 9).

As to precedents at least as early as 1664 the distinction is made between negligence so great as to be blameworthy and, therefore, deserving punishment and the slight degree of negligence that would not justify a criminal charge. (J. Kelyng, Crown Cases, 40.) And later cases reiterate this settled rule. (1829: *R.* v. *Van Butchell,* 3 Carr. & P. 629; *R.* v. *Williamson,* Id. 635; 1830: *R.* v. *Long,* 4 id. 398; 1831: *R.* v. *Same,* Id. 423; 1835: *R.* v. *Green,* 7 id. 156; 1857: *R.* v. *Hughes,* 1 Dears. & B. 248; 1860: *R.* v. *Gregory,* 2 F. & F. 153; 1864: *R.* v. *Markuss,* 4 F. & F. 356; 1866: *R.* v. *Noakes,* 4 id. 920; 1874: *R.* v. *Finney,* 12 Cox C. C. 625; *R.* v. *Nicholls,* 13 id. 75; 1883: *R.* v. *Franklin,* 15 id. 163; 1887: *R.* v. *Dogherty,* 16 id. 306; 1889: *R.* v. *Elliott,* 16 id. 710.) They use such words as " gross," " reckless," " culpable." Consistently they assert, expressly or by implication, that something more is required than the bare negligence that might be sufficient to support a civil action. They hold that it is for the jury to decide, in view of all the circumstances, whether the act was of such a character as to be worthy of punishment.

This, then, was the common law. And in this condition it passed to the Colony of New York. In the original grant to the Duke of York he was authorized to establish laws and ordinances civil and criminal, " Soe always as the said statutes ordinances and proceedings, bee not contrary to but as neare as conveniently may bee agreeable to the lawes, statutes and Government of this our Realme of England." Accordingly his laws state that as it was impossible to provide sufficient laws for all cases and proper punishments, the Court of Assizes shall award punishments in their discretion but " not contrary to the known laws of England." And in the instructions to Dongan in 1683 the Governor was required to follow established and known laws " not repugnant to but as nigh as may be agreeable to the laws of the Kingdome of England." Apparently, under the Colony

this was thought sufficient, and no independent definition of manslaughter appears in the statutes.

Under our first State Constitution such parts of the common and statutory laws of England, and such acts of the Colonial Legislature as formed the law of the Colony on April 19th, 1775, were continued in force. Chapter 22 of the Laws of 1787 related to murder. It says, however, that if the homicide occurred by misfortune the accused is to be acquitted — the old phrase homicide *per infortunium.* The reference is to the older usage — a conviction of the accused, followed by pardon. Manslaughter is not directly defined. It is considered a felony and as such is included in a statute fixing penalties for various unnamed felonies. (1 Rev. Laws, ch. 58, sec. 4.)

Finally came the Revised Statutes in 1828. Part 4 was substantially a penal code and a code of criminal procedure. It, for the first time, gives a precise definition of murder and manslaughter. And the latter is divided into four degrees. The revisers in their notes speak of the existing law. They say the offense is anomalous, ranging from murder to excusable homicide. They wish to apportion the punishment to the depravity of the offense. If the act is imminently dangerous to others, evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, it is murder. If the accused, engaged in a lawful act in which there is no apparent risk of life, but not using ordinary care and precaution, kills another he is guilty of manslaughter in the fourth degree. Evidently the Legislature was not satisfied with this definition. Its intent was to soften existing rules, not to make them more rigorous. It contained eminent lawyers well instructed as to the common law. It, therefore, struck out this clause. There remained the provision as to killing by " culpable negligence " practically in the same form as it has existed ever since. It would seem clear, therefore, that the

Legislature used the word in the same sense as it had been used for centuries — as the equivalent of " criminal," " reckless," " gross," such negligence as it is worthy of punishment.

The leading case in this State on the subject is *People* v. *Buddensieck* (103 N. Y. 487). The recorder had told the jury that " they must not only find that the evidence establishes, before they can convict, the presence of mere ordinary negligence on the part of the defendant, but they must find it in such extreme degree as the use of the term ' culpable negligence ' imports in the section of the code referred to." And again he uses the words " unlawful negligence or reckless means." This court expressed generally approval of the charge. Other passing references to the subject have been made by us. In *People* v. *Rosenheimer* (209 N. Y. 115) Judge CULLEN said that " a distance separates the negligence which renders one criminally liable from that which establishes civil liability." So in *Brown* v. *Shyne* (242 N. Y. 176) Judge LEHMAN says the charge of manslaughter can " be sustained only if the defendant's negligence reached beyond the bounds of lack of skill and foresight where civil liability begins to a point where criminal liability is imposed because the negligence is not merely venial but ' culpable,' involving fault for which the state may demand punishment."

" Culpable " negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, can be given. Under a given state of facts, whether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question whether negligence exists at all. But in the one case as in the other it may become a question of law. If the negligence

is so slight as not to reach the required standard the court should advise an acquittal of the accused. Under such circumstances the jury may not be allowed to find a verdict of guilty.

In the case before us there was sufficient evidence to justify a finding that the defendant was guilty of culpable negligence. It does not stand, however, without contradiction. The defendant's testimony shows an absence of any negligence whatever, or at most but slight negligence. Where the truth lay was for the jury to decide. They might convict the defendant of manslaughter. They might acquit him as free from negligence, or as guilty of such slight negligence as betokened no recklessness, no disregard of consequences, no indifference to the rights of the deceased. What they might not do was to find that negligence slight was also culpable.

Yet under the charge this is precisely what they were permitted to do. They were told that a slight act of carelessness might not be in their judgment culpable. If the defendant from some little error of judgment did some slight negligent act that act, perhaps, they might not consider culpable. And he refused to charge that slight negligence was not culpable but left it to the jury to say whether it was or was not.

This was error and under the facts of the case substantial error. However indefinite the rule, however uncertain the meaning of such words as " gross," " wanton," " reckless," " slight," yet in view of the facts of a particular case, both the rule and the words do convey an idea to the jury sufficient to guide their action.

The judgment appealed from should be affirmed.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND, J., dissents on the ground that unless the homicide was excusable (Penal Law, § 1054), it was manslaughter in the second degree (Penal Law, § 1052, subd. 3).

Judgment affirmed.