The People of the State of New York, Respondent, v. Max Kenda, Appellant.

Fourth Department, December 19, 1956.

*Philip D. O'Donnell* for appellant.

*Albert W. Schneider, District Attorney,* for respondent.

BASTOW, J.  The defendant has been convicted following a jury trial of criminal negligence in the operation of a motor vehicle in violation of section 1053-a of the Penal Law and reckless driving in violation of section 58 of the Vehicle and Traffic Law.  Upon this appeal from the judgment of conviction numerous errors are alleged to have occurred in the course of the trial and the charge of the court is attacked as inadequate and misleading.  To place these contentions in proper focus it is necessary to briefly examine the indictment and some of the evidence presented upon the trial.

The indictment contains three counts.  The first charges reckless driving in violation of section 58 of the Vehicle and Traffic Law.  The principal operational facts alleged therein are that the defendant operated a motor vehicle in a southerly direction on a stated highway in Herkimer County while "under the influence of intoxicating beverages" and upon the wrong side of the highway resulting in a collision with another vehicle which was then proceeding in a northerly direction on the road.  The second count of the indictment charges the defendant with the crime of operating a motor vehicle at the same time and place "while in an intoxicated condition" in violation of subdivision 5 of section 70 of the Vehicle and Traffic Law.  The third count accuses the defendant of criminal negligence in the operation of the motor vehicle on the same occasion in violation of section 1053-a of the Penal Law.  Therein it is alleged that defendant operated the vehicle while he was "under the influence of intoxicating beverages" and upon the wrong side of the road and

collided with the other vehicle operated by one Clifford Hill and causing the death of Mrs. Hill, a passenger therein.

It would appear that any finding that defendant operated his car on the easterly or wrong side of the road would be required to be based on circumstantial evidence. The defendant and the operator of the other car were seriously injured in the collision. At the time of testifying neither had any recollection as to the actual collision but each testified that immediately prior thereto he was operating his vehicle on his right side of the road. There was testimony from a friend of the defendant, who was operating his vehicle a short distance to the rear of defendant's car, that the latter was on his right side of the road at the time of the collision. Both cars, however, after the collision were locked together bumper to bumper on the easterly side of the road. It is this physical fact from which an inference might be drawn by the jury that the defendant operated his car on the wrong side of the road.

Thus, upon this phase of the case an extremely close question of fact was presented. The other charge of wrongdoing against defendant related to his alcoholic condition. Attention has been directed to the careful phraseology upon this subject in the three counts. In the respective counts charging criminal negligence and reckless driving the defendant is accused of driving '' while under the influence of alcohol '' whereas in the remaining count he is charged with driving while in an intoxicated condition.

Several witnesses, who saw the defendant either before or after the accident, expressed the opinion that at the time of observation he was intoxicated. There was evidence that in the span of 10 hours prior to the accident defendant had visited various restaurants and had been served a total of 12 to 15 drinks of whiskey. Moreover, there was competent proof that a sample of defendant's blood taken shortly after the accident contained thirty-one hundredths of one per centum by weight of alcohol. The defendant, on the other hand, produced testimony, including his own, that he was not intoxicated and had had only 5 drinks during the period of 10 hours prior to the accident. The jury impliedly rejected the People's proof and found the defendant not guilty of the count charging defendant of operating a motor vehicle while in an intoxicated condition.

In this posture of the case we are satisfied from the record that errors committed during the trial and the deficiencies and errors in the court's charge were so serious that the rights of the defendant were prejudiced and a new trial is required. We shall attempt to point out some of these that we view as most grievous.

The prosecution called one Nowacki, a photographer and operator of an ambulance service, who was formerly a member of the State police. He had visited the scene of the accident on the night thereof and had taken photographs. Upon direct examination he testified that he saw certain skid marks on the easterly side of the road and shoulder leading in a southerly direction from both rear tires of the Hill car a distance of 15 to 20 feet. These marks were not visible in any photograph taken by the witness. It later developed that none of the troopers or other persons at the scene had observed such skid marks. Upon cross-examination it appeared that about six days after the accident Nowacki had personally typed and sworn to a deposition upon which a State trooper obtained a warrant from a Justice of the Peace for the arrest of defendant. Defense counsel then asked the witness if the deposition contained the statement that '' There were no visible skid marks on the highway at the scene of the accident.'' This was objected to by the District Attorney unless the document was received in evidence. The objection was sustained. After some discussion the question and affirmative answer were permitted to stand. At this point the error was relatively harmless and could be ignored. The District Attorney, however, immediately offered the entire deposition in evidence. Proper objection was made by the defense and the trial court was alerted to the fact that only a portion of the deposition had been used to test the credibility of the witness. The District Attorney pressed for its reception in evidence upon several fallacious theories. After considerable discussion the trial court eventually refused to admit the document. The prosecutor not to be thwarted, however, then proceeded on redirect examination to question the witness with reference to the deposition and by means of asking whether or not the witness stated so and so in the writing succeeded in getting before the jury the entire contents thereof. Therein, the position of the cars as the witness observed them was described and concluded with the obvious conclusion of the affiant that '' These cars met head on.'' Defense counsel tried to interrupt the reading of this sentence but was silenced by the trial court. After it was read it was stricken and the jury instructed to disregard it. The witness was then asked by the prosecutor what he meant when he used the word '' visible '' in the part of the deposition stating that '' there were no visible skid marks.'' Over objection he told the jury that he meant '' They weren't too sharp.'' This method of redirect examination covers some six pages in the record and was permitted over the repeated objections of the defendant.

All of this was serious error. The defendant upon cross-examination had the right to question the witness as to whether on a prior occasion he had made a contrary sworn statement on a vital issue of the case. There the matter should have ended. The persistence of the District Attorney in insisting that all of the deposition be received in evidence was not only error but placed the defendant in a false light before the jury, which might conclude that the defense was attempting to prevent them from receiving some important information. The error was compounded by the further action of the District Attorney in successfully getting the deposition in evidence by a series of questions in each of which was included a quotation from the deposition and the witness confirmed that he made such a statement in the deposition. Most damaging of all was the conclusion of the witness in the deposition that the cars met head on which carried with it the necessary inference that defendant was driving on the wrong side of the road. The right of a cross-examiner to use a witness' own prior statement in which he has given a contrary version for the purpose of testimonial impeachment and the corollary rule that such prior statements have no substantial or independent testimonial value are so firmly imbedded in our law of evidence that the citation of authority is scarcely required. (3 Wigmore on Evidence [3d ed.], § 1018; *Matter of Roge* v. *Valentine,* 280 N. Y. 268, 277; *People* v. *Ferraro,* 293 N. Y. 51, 56; 30 Corn. L. Q., 511.)

It is our further opinion that defendant's rights were prejudiced in connection with the implementation by the trial court of the provisions of section 425 of the Code of Criminal Procedure. Upon this subject we have recently written that the trial court '' erred in its repeated attempts in the presence of the jury to press the defendants and their counsel to decide whether or not consent would be given to permit the jury, upon retiring for deliberation, to take with them the exhibits ''. (*People* v. *Brown,* 2 A D 2d 202, 204.) Here no mention was made of the exhibits prior to the retirement of the jury. In about an hour the jury returned and stated that they would like the pictures and a chart prepared by a pathologist, who testified for the People. The court stated that it was its duty to read to the jury the statute with reference to exhibits. Section 425 was then read in its entirety and the jury was expressly told that '' You may have those exhibits accordingly only upon the consent of the defendant and the People. Now I have to ask the counsel, is there any objection.'' The defendant excepted to '' this procedure '' but consented that the jury take the exhibits.

After further instructions on another subject the jury retired without the exhibits. Thereafter the trial court attempted to place on the record a general stipulation and consent that the jury have certain named exhibits. Defense counsel refused to give a general consent but limited his consent to that given in the presence of the jury. The court then told defendant's lawyer that "under the law, all of this consent must be in the absence of the jury. It is prejudicial error to let the jury know which side is withholding consent."

It is difficult to square this latter statement with the pointed action of the court in requiring the defendant to give or withhold consent in the presence of the jury and after the latter had been told that under the statute such consent could be withheld. It is apparent that the court was cognizant of the proper rule but failed to implement it. The statutory provision giving a defendant or the prosecutor the right to withhold his consent that a jury take with them exhibits received in evidence serves a salutary purpose. It may be implemented by the trial court without the necessity of placing either party in a precarious position in the eyes of the jurors. Sufficient has been written on the subject through the years by many courts that further admonitions would seem to be unnecessary.

We next consider the charge of the trial court. Two deficiencies should first be noted that may well have caused confusion in the minds of the jury as reflected by their subsequent requests for instructions. No attempt was made to inform the jury of the nature of the charges in the indictment. The subject was dismissed with the statement that respective counsel had either read or referred to the indictment. We are not attempting to lay down a rule that in every case the reading of an indictment is a requirement. But here, as has been pointed out, the Grand Jury by the use of precise language had accused defendant of culpable negligence and reckless driving while "under the influence of intoxicating beverages" and separately had charged him with the crime of driving while "in an intoxicated condition." These variants were not called to the attention of the jury or otherwise discussed. The distinction is a real one. (Cf. Vehicle and Traffic Law, § 71, subd. 2, par. [b]; *Matter of Moore* v. *Macduff,* 309 N. Y. 35.) In response to a request the court did charge that proof of driving while under the influence of intoxicating beverages is not sufficient to establish the fact of driving while intoxicated but there was no further elucidation of the subject.

Closely allied to this was the failure of the trial court to summarize or marshal the evidence for the benefit of the jury. It has been written that " In a criminal case we think the judge has the right, and indeed it is his duty to present the evidence to the jury in such light and with such comments that the jury may see its relevancy and pertinency to the particular issue upon which it was admitted, and thus be better qualified to appreciate its character and weight and to determine its credibility." (*People* v. *Fanning,* 131 N. Y. 659, 663.) And in *People* v. *Odell* (230 N. Y. 481, 488) it was said that " The trial judge should not as a rule limit himself to stating good set terms of law culled from the codes and the reports. Jurors need not legal definitions merely. They require proper instructions as to the method of applying such definitions after reaching their conclusions on the facts." This court has recently had occasion to reiterate this rule citing the foregoing and other authorities. (*People* v. *Birch,* 283 App. Div. 844.)

In our opinion the court's charge on the subject of culpable negligence was in part inaccurate and misleading. The jury were told that " Our higher courts historically have said that culpable has been defined as guilty crime deserving punishment or condemnation and more mildly as deserving blame or censure, blameworthy. It may be said that any negligence resulting in injury to another is blameworthy." This quotation consists of almost the precise words used by Judge ANDREWS in *People* v. *Angelo* (246 N. Y. 451, 453). There, however, the Oxford Dictionary definition of the word " culpable " was being set forth. But the court went on to write that " Were this the meaning of the Legislature the use of the adjective [culpable] is superfluous " (p. 454). There followed a review of the common law and statutory enactments on the subject and finally the since recognized and followed definition of culpable negligence was stated to be (p. 457) " something more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others." Thus, the court made clear that the word " culpable " meant more than the mild use of the word as blameworthy because any negligence resulting in injury to another is blameworthy.

While the trial court correctly defined culpable negligence as set forth in the *Angelo* case and told the jury that criminal negligence and culpable negligence are synonymous the jury

was finally told that "Culpable is defined as being blamable. Negligence is defined as being the doing or commission of some act which a reasonably prudent and careful person would not have done or performed under the circumstances or the failure to do or perform such act which a reasonably prudent and careful person would have done or performed under the circumstances. * * * And if you attach these two words or put them together, culpable means blamable and negligence means the doing of an act which a reasonably prudent person and careful person would not do or the failure to do or perform some act which a reasonably prudent and careful person would do, then you have the definitions as combining these two words of a negligence which is blamable." Thus, the jury was told that a milder definition of culpable was a blameworthy act; that any negligence resulting to another was blameworthy; that culpable was defined as blamable and when coupled with ordinary negligence the result would be negligence which is blamable. If this is correctly understood it seems plain that the jury was told in substance that culpability resulted from a finding of ordinary negligence on the part of the defendant.

The court in charging reckless driving further told the jury that reckless and culpable are synonymous and then said that proof of reckless driving called for evidence showing something more than mere negligence. After the jury had deliberated for nine hours they returned and asked for clarification as to "reckless driving and criminal negligence and whether or not they are synonymous." The court gave them the classic definition of culpable negligence and told them that reckless and culpable are synonymous and that reckless driving requires evidence showing more than mere negligence. But again the court instructed the jury that culpable was blamable and negligence was the failure to use ordinary care and "then I have the definition combining these two words of negligence which is blamable." While no exception was taken to this portion of the charge we conclude that it was not only confusing but might well have led the jury to believe that culpable negligence was ordinary negligence plus a finding that the acts of the defendant were blamable or blameworthy. The subject of culpable negligence has recently been reviewed in *People* v. *Decina* (2 N Y 2d 133) and the definition thereof stated in *People* v. *Angelo* (*supra*) quoted with approval.

Lastly, because a new trial is required, we point out one other matter that apparently confused the jury. The court first instructed the jury that if they found the defendant's culpable

4

negligence caused the death of the passenger in the other car they should return a verdict of guilty of the count charging criminal negligence; that if they were not satisfied beyond a reasonable doubt that the death of the passenger was so caused but were satisfied that defendant operated his car recklessly the jury should return a verdict of guilty of the count charging reckless driving and lastly, that if they were not satisfied beyond a reasonable doubt that the defendant operated his car recklessly then a verdict could be returned upon a proper finding that the defendant operated his car while in an intoxicated condition. The jury was then instructed that the form of their verdict could be guilty or not guilty of all three counts or any combination of one or two counts thereof. The questions asked by the jury when they returned for instructions show that they were confused by these conflicting instructions.

The charge of driving while in an intoxicated condition was, of course, a separate and independent crime that should have been considered and passed upon by the jury without reference to the other two counts (cf. *People* v. *Skarczewski,* 287 N. Y. 826). The latter two counts required the same quantum of proof as to the negligent operation of the vehicle (*People* v. *Bowles,* 280 App. Div. 476, 480) and if the defendant had been convicted of both then section 1938 of the Penal Law would become applicable and double punishment could not be inflicted for an act or omission made criminal in different ways.

The judgment of conviction should be reversed on the law and the facts and a new trial granted. The order overruling a demurrer to the indictment should be affirmed.

All concur. Present — VAUGHAN, J. P., KIMBALL, WHEELER, WILLIAMS and BASTOW, JJ.

Judgment of conviction reversed on the law and facts and a new trial granted. Order affirmed.