Harold T. Garrity, J.
In this prosecution under section 1053-a of the Penal Law (criminally negligent operation of a motor vehicle resulting in death) there is now before the court a motion to dismiss made by the defendant at the dose of the People’s case.
Shorn of all extraneous matter, the issue of law confronting us, as part of the question of failure to establish a prima facie case, is simply: Is intoxication, coupled with an accident occurring on the wrong side of a highway, in and of itself culpable negligence ” within the meaning of the statute?
The statute reads: “A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death.”
The pertinent testimony adduced on behalf of the prosecution can be summarized as follows: The two police officers, Sergeant Lafaro and Patrolman McKechnie and the hospital nurse, testified that in their opinion the defendant was intoxicated. A physician, Dr. Elbert Loughran, who was driving his car in the immediate area and was present at the scene within moments of the accident, would not venture an opinion as to whether the defendant was drunk or sober.
This defendant had been involved in a head-on collision that demolished both automobiles. When found by the police, he was hanging out of the car with his head on the pavement and his leg caught in the automobile. He could not be questioned *526 at the scene. Defendant had sustained a severe laceration of the head and a dislocated hip which required surgery.
There has been no admissible evidence as to any scientific test to determine the defendant’s being sober or intoxicated.
Defendant had been observed as he drove along the Parkway some one mile from the accident by Officer McKechnie. The officer, although following defendant’s and several other cars, had observed no improper driving or violation of any rule of the road. He further testified that defendant had reduced his speed to 35 miles per hour at Leighton’s, approximately one mile from the accident.
Defendant’s car was being followed by one, Eugene Jacobs, who testified that at one point he had passed defendant’s car, driving about 40 miles per hour, at which time the police car, a sports car and defendant’s car were all within view of each other. He observed no reckless or improper driving or speeding by defendant. The defendant’s car then drifted from the north lane nearest the curb to the curb side of the opposing lane where it collided with a car proceeding in the opposite direction on the latter lane.
A young girl died as a result of this accident. We must, however, consider the matter dispassionately as is the obligation imposed upon the court under our law. We must not decree guilt because of the tragic death.
/We would be less than candid were we not to admit being tempted to declare that this issue is one of fact, thereby placing the burden of determining the defendant’s fate upon the jury. If that course were to be followed, under the circumstances, we would be evading our solemn obligation as a judge however difficult and soul-searching the task.
A homicide has occurred. The question is whether it is excusable. If it is “ homicide per infortunium ”, there is no criminal responsibility as homicide by misfortune is not a crime. (People v. Angelo, 246 N. Y. 451.)
In People v. Angelo (supra, p. 457) there is a most learned review of the pertinent authorities. The Court of Appeals there laid down the rule which has since been cited repeatedly. It defined ‘‘ culpable negligence ” as “ more than the slight negligence necessary to support a civil action for damages. It means, disregard of the consequences which may ensue from the act, and indifference to the rights of others. ’ ’
The evidence must establish ‘ ‘ a consciousness on the part of the driver of impending dangerous consequences if he persists in his conduct”. (Matter of Jensen v. Fletcher, 277 App. Div. *527 454, 458.) And in Black’s Law Dictionary, [3d ed.], “ recklessness ” is defined as The state of mind accompanying an act, which either pays no regard to its probably or possibly injurious consequences, or which, though foreseeing such consequences, persists in spite of such knowledge. ’ ’
Many legal authorities have grappled with the difficult problem of precise definition in this field. In the Restatement on Torts (§ 500, comment g) recklessness ” is described as a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.”
In applying the several definitions it is well to recall the admonition of Chief Judge Cullen in People v. Rosenheimer (209 N. Y. 115, 123) that: “ A distance separates the negligence which renders one criminally liable from that which establishes civil liability.” This very admonition was reiterated by the Court of Appeals in People v. Bearden (290 N. Y. 478) in setting aside a conviction under the statute in question.
The question of intoxication, per se, as evidence of criminal negligence, is touched upon in People v. Bearden (supra) and in People v. Brucato (32 N. Y. S. 2d 689). In both, however, it is considered as one of several elements, combined with disregard of signal lights (Bearden), or speeding or “ zigzagging or doing anything from which it might be reasonably inferred that he was guilty of any culpable or wanton misconduct in the management of this vehicle.” (Brucato, p. 690.)
In People v. Brucato (supra, p. 691) the court speaks of a “ wanton ’ ’ and devil may care ’ ’ attitude such as unmistakably and irresistably establish a “ contemptuous disregard for consequences to life and limb of others.” That court then concluded that the evidence must suffice to establish virtually “ a willingness to do harm on the part of the offender.”
Whether or not the doctrine barring inference on an inference ” truly obtains (Richardson on Evidence [8th ed.], § 152), it is nevertheless my judgment that here the ‘ ‘ ultimate inference of guilt cannot properly be drawn ” (1 Wigmore on Evidence [3d ed.], § 41). The circumstances upon which it is sought to establish a determination of criminal negligence are themselves predicated upon conjecture. (People v. Kennedy, 32 N. Y. 141.)
The indictment itself predicates defendant’s responsibility not only as being under the influence of liquor ’ ’ but driving at an excessive rate of speed ”, being on the left hand side of *528 the Parkway ” and failing “to obey the rules of the road”. The only fact established with legal sufficiency is the improper position of the car at the time of the impact.
Defendant, presumed to be innocent until proven guilty beyond a reasonable doubt, is not required to explain the accident. The burden of proof never shifts from the People to establish that the defendant was intoxicated and that, furthermore, such condition caused the homicide. This has not been done. To adjudge guilt because of the position of defendant’s car or upon the rather tenuous testimony as to defendant’s alleged intoxication under the circumstances would be an unwarranted determination by a jury under the facts as elicited and presented by the People.
The People offered the testimony of Dr. Sonnenberg, a physician who was in charge of the emergency service at the time of the accident at the Dobbs Perry Hospital. The doctor first testified that he had treated the defendant, whereupon the defendant’s attorney objected to any further testimony by this witness on the ground of incompetency. There was no legal waiver by the defendant of this privileged relationship.
Section 352 of the Civil Practice Act prohibits the disclosure of any information acquired by a physician while acting in his professional capacity, and he clearly so acted in this case. The rule, of course, also applies to criminal prosecutions. The court sustained defendant’s objection.
The People rested without offering any proof whatsoever of a blood test. It, however, was subsequently reported in the newspapers of February 23 to have shown .23% alcohol. The press attributed the information to the District Attorney’s office.
I consider the statement if made by the District Attorney’s office during the pendency of this trial as to evidence not before the jury or the court as highly improper. This alone would warrant a mistrial. I have, however, refrained from so doing because of the pendency of the instant motion to dismiss.
It must be assumed that no evidence was offered as to the blood test because it was taken by this physician. The District Attorney’s office, as is every lawyer and many laymen, is well aware of the venerable rule prohibiting a physician from disclosing data derived in the course of his professional duties. Having been barred from introducing this evidence by timely and proper objection by defense counsel, it can only be deemed as most improper and prejudicial to impart this information to the press for publication during the pendency of this jury trial.
*529 If, as we believe, a jury’s verdict of conviction should be set aside on the basis of the People’s case, we should not avoid a difficult and onerous duty by letting the ease go to the jury in the expectation that their acquittal would spare us this task. Such an expediency would neither be in good conscience or good law.
We, therefore, grant defendant’s motion to dismiss.