DUREN *v.* STATE

[No. 69, October Term, 1953.]

586

*Decided January 14, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Gordon H. Levy,* for appellant.

*W. Giles Parker*, Assistant Attorney General, with whom were *Edward D. E. Rollins*, Attorney General, *Anselm Sodaro*, State's Attorney for Baltimore City and *Julius A. Romano*, Assistant State's Attorney, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was tried in the Criminal Court of Baltimore City on the charge of manslaughter by automobile. The Court, sitting without a jury, found him guilty, and from the judgment and sentence which followed, he appeals on the formal ground that the evidence was insufficient to sustain the conviction, as a matter of law, relying, however, in substance, on a version of the occurrence different from the State's and on the lack of weight of the evidence.

*Neusbaum v. State*, 156 Md. 149, held that gross and criminal negligence in the operation of a motor vehicle resulting in the death of the victim, was involuntary manslaughter at common law. This was in 1928. Thirteen years later, the Legislature enacted the statute now codified as Section 455 of Article 27 of the Code of 1951, which provides that: "Every person causing the death of another as the result of the driving, operation or control of an automobile, . . . or other vehicle in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile' . . ."

The Court of Appeals of New York in a well reasoned and documented opinion, reported as *People v. Angelo*, 159 N. E. 394, dealt with a statute of that State similar to Maryland's manslaughter by automobile statute, and the effect on its interpretation of the common law understanding of negligence which amounts to crime. It was there said that: ". . . at least as early as 1664 the distinction is made between negligence so great as to be blameworthy and, therefore, deserving punishment, and the slight degree of negligence that would not justify a criminal charge." The opinion then cites a number of old cases and adds: "They use such words 'gross,'

'reckless,' 'culpable'. Consistently they assert, expressly or by implication, that something more is required than the bare negligence that might be sufficient to support a civil action. They hold that it is for the jury to decide, in view of all the circumstances, whether the act was of such a character as to be worthy of punishment." The court added that this rule, as part of the common law, became the law of New York and the Legislature must be deemed to have used the word "culpable" in the statute: ". . . in the same sense as it had been used for centuries—as the equivalent of 'criminal,' 'reckless,' 'gross,' such negligence as is worthy of punishment." It means, said the Court: ". . . disregard of the consequences which may ensue from the act, and indifference to the rights of others."

The Maryland statute has been given the same interpretation as that of New York. In *Hughes v. State,* 198 Md. 424, this Court held that the Legislature had carried over into Section 455 of Article 27 of the Code, 1951 Edition, the common law concept and meaning of gross negligence. In *State of Maryland v. Chapman,* 101 F. Supp. 335, Judge Chesnut in the United States District Court for the District of Maryland, declared that proof of simple negligence will not support a conviction of manslaughter but that there must be proven gross negligence, which must be ". . . such that it amounted to a 'wanton or reckless disregard for human life'." This Court, in *Hughes v. State, supra,* said that Judge Chesnut's statement of the law ". . . seems to be the test to be applied under the manslaughter statute." See also *Allison v. State,* 203 Md. 1, 5, 98 A. 2d 273, 275.

The State produced testimony at the trial which showed that the defendant was driving a Cadillac automobile north on Fremont Avenue in the City of Baltimore at a speed estimated by an experienced driver to have been at least sixty miles an hour, at about seven o'clock on a Sunday evening in December. As the car approached the intersection of Fremont Avenue and Laurens Street,

a heavily congested residential and business area, the man who was killed walked west from the east side of Fremont Avenue, into the street from between the second and third of three cars parked in a line along the east curb of Fremont Avenue at a point not precisely located, but from police measurements and the testimony of eyewitnesses, necessarily from sixty to seventy-seven feet north of the north curb line of Laurens Street. He was struck by the right front bumper of the appellant's car and hurled in the air with such force and in such a manner that he landed on the trunk of the third parked car. The investigating police officer found four skid marks, admittedly made by the tires of the appellant's car, starting twelve feet south of the north curb line of Laurens Street and continuing uninterruptedly northward, with occasional zig-zags for a distance of one hundred forty-four feet. The streets were dry.

The State contends that it was culpable, reckless, gross and so, criminal negligence, to have operated an automobile on a city street in a populous residential and business area at a time when citizens afoot and in cars were likely to be on the street, at a speed great enough for the car, after it had skidded, with the brakes holding on all four wheels, seventy-two feet at a minimum to eighty-nine feet at a maximum, to still be going fast enough to throw a human body high and far enough to cause it to land on the trunk of a car a number of feet away and then to continue to skid as far again. The trial court agreed and found that the car was operated in a dangerous and wanton manner at a grossly excessive rate of speed and that this was an efficient cause of the death of the victim. As Judge Chesnut said in the *Chapman* case, to which we have referred, whether there is gross negligence in any occurrence must be determined: ". . . on the consideration of all the facts of the particular case. . ." Again, he says the test is: ". . . whether the conduct of the defendant, considering all the factors of the case, was such that

it amounted to a 'wanton or reckless disregard for human life'."

The Court of Appeals of New York in the *Angelo* case, *supra,* in speaking of gross negligence, said 'it means: ". . . disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, can be given. Under a given state of facts, whether negligence is culpable is a question of judgment. Ordinarily for the judgment of the jury, as is the question whether negligence exists at all." When a case is tried by a court without a jury, this Court on appeal, under Rule 7 (c) of the Criminal Rules of Practice and Procedure, may review both the law and the evidence to determine whether the evidence is sufficient to sustain a conviction but the verdict of the trial court shall not be set aside on the evidence unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Hughes v. State, supra.* We cannot say that the trial court was clearly wrong when it found that the appellant was driving on a city street at a speed so grossly excessive that his car was beyond effective control and that this conduct, under the circumstances, amounted to a disregard of the consequences which might ensue and indifference to the rights of others, and so was a wanton and reckless disregard for human life.

Long before automobiles, with their power and speed measured in terms of the number of horses theoretically under their hoods, the courts held that allowing a horse drawn vehicle to proceed at an excessive or immoderate speed could constitute criminal negligence in a given environment. A number of the early cases are collected in *People v. McMurchy,* 228 N. W. 723. In that opinion the Supreme Court of Michigan was considering the constitutionality of an act similar to Section 455 of Article 27 of the Code. One of the provisions of the act was that the operation of a vehicle at an immoderate

rate of speed which caused the death of another, was negligent homicide. The Court held this a valid exercise of legislative power, relying on the common law concept of involuntary manslaughter. One of the authorities cited was *Rex v. Walker,* 1 Carrington & Payne 191, \*320 (1824). There the defendant was driving a cart with two horses which were cantering. The pedestrian who was struck was drunk and could not get out of the way because of that fact and the rapid pace of the horses. The Court, in its charge, laid down the following: "That if a man drive a cart at an unusually rapid pace, whereby a person is killed, though he called repeatedly to such person to get out of the way; if from the rapidity of the driving, or any other cause, the person cannot get out of the way [in] time enough, but is killed, the driver is in law guilty of manslaughter, . . ." Another case relied on was *Rex v. Timmons,* 7 Carrington & Payne 728, \*499 (1836). The accused was driving an omnibus which was racing with another. The charge to the jury was that they must be satisfied: ". . . that the prisoner was driving in such a negligent manner that by reason of his gross negligence, he had lost command of his horses?"

It is plain that the environment in which speed is indulged must determine whether it does or does not show gross negligence at a given time. Speed in the open country on a four lane highway may be very high and not constitute negligence. A much lower rate of speed in a city street may constitute gross negligence. This, too, was the law long before automobiles existed. *Blackstone's Commentaries,* Lewis's Ed., Vol. 4, p. 192; and *Wharton's Criminal Law,* 12th Ed., Vol. 1, Sec. 480. In *Belk v. People,* 17 N. E. 744, the Supreme Court of Illinois decided a case in 1888 which involved the collision of a speeding team and wagon with another vehicle, holding that the question presented was whether the collision was: ". . . the result of the reckless and wanton failure of the plaintiffs in error, or some one or more of them, to control and manage the team of which

they were in charge, or was the result of unavoidable mischance or accident." The Court went on to say: "There can be but little distinction, except in degree of criminality, between a positive intent to do wrong and an indifference whether wrong is done or not. . . As a rule, the care required is to be proportioned to the danger; hence driving rapidly in an open country highway may not be negligence, while the same character of driving in a thronged street or thoroughfare, or where there is known hazard to others, may be negligent in the highest degree."

Obviously, what must be looked for in each case is whether, by reason of the speed in the environment, there was a lessening of the control of the vehicle to the point where such lack of effective control is likely at any moment to bring harm to another. Cf. *Darienzo Trucking Corp. v. Sullivan*, 202 Md. 32, 39-40, 95 A. 2d 293, 296. If there is found such lack of control, whether by reason of speed or otherwise, in a place and at a time when there is constant potentiality of injury as a result, there can be found a wanton and reckless disregard of the rights and lives of others and so, criminal indifference to consequences.

Since speed may constitute negligence in one situation and not in another, there are cases which have held that speed alone will not support a conviction of manslaughter. However, even those Courts which have so decided have upheld manslaughter convictions were speed, under the circumstances in which it was found, was evidence of reckless disregard for life. *Hobbs v. State*, (Fla.) 91 So. 555; *Johnson v. Commonwealth*, (Ky.) 256 S. W. 2d 527; see also *State v. McIvor*, (Del.) 111 A. 616; and *State v. Whaley*, (N. C.) 132 S. E. 6.

The appellant's version of the occurrence is that he was driving at a speed of thirty to thirty-five miles an hour. When he was midway of the intersection of Fremont Avenue and Laurens Street, he noticed another automobile coming west on Laurens Street at a high rate of speed. To avoid a collision, he stepped on the

accelerator to clear the intersection. As he was so doing, a man stepped out between two parked cars and he immediately applied his brakes and swerved to the left in an unsuccessful effort to avoid striking him. Two State's witnesses did not see or hear any car coming west on Laurens Street. He produced one witness who said that there was a car coming west on Laurens Street, with its horn blowing. It is the province of the trial court to judge the credibility of witnesses and the effect of their testimony. That the trier of the facts would have had difficulty in accepting the appellant's version, in the face of the testimony of the two witnesses who neither saw nor heard the second car, and the undisputed physical facts, is difficult to escape. The parties were in agreement that Laurens Street is an ordinary city street approximately forty feet wide. The skid marks started twelve feet south of its north curb line. Whatever the reason the appellant applied the brakes with such force as to produce the skid marks, there necessarily had to be a reaction time which elapsed from the instant of alert to the time the brakes locked the wheels. Even at the speed which the appellant testified he was travelling, his car would have gone many feet in the course of the reaction and pedal pushing period. This indicates that the appellant must have begun the process of stopping well south of the skid marks. It makes well nigh incredible appellant's contention that he was speeding up rather than stopping in Laurens Street.

The appellant makes a further subsidiary point that the cause of death was the negligence of the pedestrian stepping out into the path of the car. If the appellant was guilty of gross negligence, he cannot excuse his conduct and escape the consequences by showing that the deceased was guilty of contributory negligence. Necessarily, the criminal negligence must have produced the death if the accused is to be guilty of manslaughter. If, however, that criminal negligence is found to be a direct and proximate cause of the death, the guilty one

is not relieved from responsibility by the fact that the negligence of the other may have concurred in pro-ducing the result. *Wharton,* Opus cited, Sec. 206; *Belk v. People, supra;* and *Prezzi v. United States,* (D. C.) 62 A. 2d 196. It must be clear that the trier of the facts justifiably found that speed and lack of control of the automobile was a direct and proximate cause of the death. The appellant's own testimony is that the pedestrian was from sixty to seventy-seven feet north of him and fourteen feet from the east side of Fremont Avenue, when he first saw him. With that much opportunity to do so, he was unable to avoid striking him with such force that death must have been almost inevitable. Many pedestrians are struck under circumstances similar to those in the case at bar, but because control of the car permits reduced or diminished force, they do not die but suffer only broken bones or other lesser injuries.

We think that the evidence was sufficient to sustain the verdict that neither of the defenses relied on by the appellant serves to show that the trial court was clearly wrong in holding that the automobile was operated in a grossly negligent manner and that this produced the death of the man it hit.

*Judgment affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

In appeals from the judgment of a court, sitting without a jury in a criminal case, the scope of review on the facts is broader than in a jury case, and not limited to the legal sufficiency of the evidence. *Diggins v. State,* 198 Md. 504. We must, of course, give weight to findings of disputed fact where credibility is involved. In the instant case, with due allowance for these findings, I think the trial court misconceived the applicable rule of law.

The only act of negligence relied on by the State was excessive speed. After the State's first witness had

testified that the accused was "going a little bit fast—doing better than thirty", the State's Attorney stated: "My whole case is based on an estimate of speed. I will put on another witness and see what I can develop." He then produced a witness who testified that the car was being driven at "about sixty miles an hour." This was corroborated to some extent by the skid marks, although there was no expert testimony as to what speed they would indicate. Nor was the testimony wholly satisfactory as to the relation of speed to the accident, for the point of impact was not established and there was testimony that the car went a considerable distance beyond the place where the body was lying. The defendant and a bystander witness produced by him both testified to a speed of between 30 and 35 miles an hour. The trial court, in his opinion, said as to the speed, "I don't know whether it was sixty miles an hour or not. That may have been exaggerated." He nevertheless characterized the speed as "grossly excessive." The statutory limit was 25 miles per hour.

Even in civil cases it has been held that speed in excess of the statutory limit is not evidence of negligence *per se*, nor is it always the proximate cause of an accident. It must be weighed in the light of the surrounding circumstances. In the instant case it is undisputed that the accused had a green light at the intersection, so there was no occasion to reduce speed there, whether we accept his version of speeding up to avoid another car or not. The time was Sunday evening, and although this is a market area, the market was closed and there were not many people on the street. When the accused was almost across the intersection, a man came into the bed of the street from between parked cars north of the cross-walk, at a point where motor vehicles have the right of way. This man had been drinking, as shown by the post mortem examination. The driver made every effort to stop, but could not avoid striking him. In a civil action, there might well have been a directed verdict for the defendant on

the ground of contributory negligence. Cf. *West v Belle Isle Cab Co.*, 203 Md. 244, 251-252, 100 A. 2d 17, 21, and cases cited. It is true that contributory negligence would not be a bar to a prosecution for criminal negligence, but since all negligence is relative, it cannot be ignored in considering the extent of the defendant's breach of duty, or the question of proximate cause.

But assuming that the excessive speed of the car was some evidence of negligence and that it was a contributing cause of the accident, it does not follow that it was gross negligence under the circumstances. Ordinary negligence is not enough. There must be an element of "wanton or reckless disregard for human life." *Hughes v. State,* 198 Md. 424, 432; *State v. Chapman,* 101 F. S. 335. In the *Hughes* case, the action of the angry defendant, in deliberately swerving his truck into a group of pickets beside the road, while not intended to kill but only to alarm, showed a wanton and reckless disregard of the probable consequences. It is this element that is lacking in the instant case. The argument that, because of the speed, the car was not under sufficient control to meet the unexpected entry into the street of a negligent pedestrian, and that this establishes a criminal liability, could be applied with equal force to any accident anywhere, if a car is driven beyond the speed limit. The argument ignores the fundamental distinction between civil and criminal liability. To establish the latter, I think the evidence must show a degree of negligence that is the substantial equivalent of criminal intent.

The case of *Hobbs v. State,* 91 So. 555 (Fla.), cited in the opinion of the court, holds that speed, under some circumstances, may show culpable negligence, but the circumstances are not stated in the opinion. In the more recent case of *Preston v. State,* 56 So. 2d 543 (Fla.), the court reversed a conviction where the speed was 50 miles per hour, at an intersection in Jacksonville where the limit was 25 miles per hour, on the ground that excessive speed alone is not necessarily culpable negli-

gence sufficient to sustain a charge of manslaughter. See also *Smith v. State,* 65 So. 2d 303 (Fla.), where a conviction was reversed on similar grounds, in a case involving a pedestrian also at fault.

Again, while the case of *People v. Angelo,* 159 N. E. 394 (N. Y.), correctly states the rule, its application is illustrated by the case of *People v. Gardner,* 8 N. Y. S. 2d 917, 921. In that case a speed of from 50 to 65 miles per hour was held not sufficient to sustain a convcition where the car struck a culvert, for the court said: "The test is not satisfied by proof of excessive speed amounting to negligence but proof of speed of that character— if such was the case—and other circumstances which, as we have seen, together must show a reckless disregard by the accused of the consequences of his conduct and his indifference to the rights of others."

In *Johnson v. Commonwealth,* 256 S. W. 2d 527 (Ky.), relied on in the opinion, the facts were much stronger than in the instant case. There, the State produced evidence of a speed of from 45 to 70 miles per hour on a city street, and the car went out of control and ran up on the sidewalk into a group of boys in plain view. The court stated that the evidence would support a conviction, although the case was reversed on the ground that the question of action in an emergency, which was the only defense, was not properly left to the jury.

I think the verdict of the trial court was clearly wrong under the circumstances and that the judgment should be reversed.