# CEDRIC EUGENE SCOTT AND JOSEPH LEROY OWENS *v.* STATE OF MARYLAND

[No. 1009, September Term, 1980.]

*Decided June 4, 1981.*

The cause was argued before MOORE, LOWE and MACDANIEL, JJ.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant Owens. *Gary Offutt, Assistant Public Defender,* with whom was *Debra A. Hochman, Assigned Public Defender,* on the brief, for appellant Scott.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland, William A. Swisher, State's Attorney for Baltimore City,* and *Leslie Stein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MACDANIEL, J., delivered the opinion of the Court.

Appellants Joseph Leroy Owens and Cedric Eugene Scott were indicted for first-degree murder, armed robbery and related offenses and in July, 1979, they were tried jointly by a jury in the Criminal Court of Baltimore. They were convicted of felony-murder and use of a handgun in the commission of a felony or crime of violence. Each appellant was sentenced to concurrent terms of life imprisonment and fifteen years' imprisonment for felony-murder and the handgun offense, respectively. In this consolidated appeal they raise a host of issues, some jointly, others individually. We preface our consideration of these with a statement of the facts of the case.

On the evening of March 2, 1979, in Baltimore City, as appellants were about to enter the School Street apartment of their friend Joanne Chester, they saw the victim, an off-duty police officer, trying to unlock his car door. The man was very drunk, and looked it, so appellants immediately decided to leave the Chester residence and rob him. What happened next was seen or heard by at least four people.

A neighbor, Cynthia Rhodes, and her friend Johnny Norris entered the Chester residence soon after appellants

left; Rhodes saw the victim "leaning on his car" while appellant Owens was "patting him up and down"; appellant Scott was "standing around, looking around."

As Rhodes and Norris entered the house Ralph Willet, another of Ms. Chester's guests, was on the second floor, looking out a bedroom window on the scene below. First he saw the victim fumbling with his car keys, trying to unlock the vehicle. Then he saw appellant Owens grab the man, fling him to the ground and kick him. Appellant Scott searched the victim first. Then Owens went through the victim's pockets; he removed a revolver from the man's top coat and exclaimed "This is my lucky day!" Owens fired the gun into the air twice. Then Willet saw him aim the revolver at the victim and fire a third and fourth time. Ms. Chester, Cynthia Rhodes and Johnny Norris, inside the house, heard the shots.

Later that evening appellants went to the Exeter Street residence of Ruby Keesler. Ruby's sister, Eva Pearl, was there and she heard appellant Owens state that "he had killed a cop" in self-defense. She saw him "handing the gun around, trying to sell it."

Appellants were arrested within twenty-four hours of the commission of the crime. Police detectives also found the gun during a search of the Exeter Street residence. Additionally, each appellant gave the police a signed statement, admitting complicity in the robbery but blaming the other for the murder.

We shall first consider the issues raised by appellant Owens individually, then those raised by appellant Scott and, finally, those issues raised by appellants Owens and Scott jointly.

*Owens*

### I.

Appellant Owens first contends the trial court erred in refusing to permit him to cast doubt upon the identification testimony against him by referring to the complexion of a

juror for purposes of comparison. The trial court is vested with discretion to permit or deny the reception of demonstrative evidence, and we find no abuse of that discretion here. *See Tripp v. State,* 36 Md. App. 459, *cert. denied,* 281 Md. 745 (1977). In any event, our review of the transcript persuades us that there was sufficient testimony to support appellant's point without involving one of the jurors.

## II.

Appellant Owens contends the trial court improperly admitted hearsay testimony into evidence. He refers to the State's witness's testimony that Owens exclaimed, "This is my lucky day!", and that he expressed concern that "they" (presumably the police) "might have got" his co-defendant following the commission of the crime. In each case the admissions were proper; in any event, the evidence against Owens was overwhelming, and the statements were insignificant by comparison. *Dorsey v. State,* 276 Md. 638 (1976).

## III.

Owens contends that the trial court misinstructed the jury as to the doctrine of felony-murder. The court said:

> "[H]owever, there is no criminal liability on the part of a defendant if the killing was a fresh and independent product of the mind of another accomplice outside the scope of or foreign to the common object or purpose for which they combined, that is, robbery."

Appellant complains that the trial court should have further instructed the jury that even the person who did the shooting could not be convicted of felony-murder if the murder was committed as an act independent of and separate from the underlying felony. There was absolutely no evidence in the case to have warranted such an instruction. All the evidence

indicated that the murder was committed during the course of the robbery, either to silence the victim or to allow the robbers to escape, or both. As a matter of fact, and in view of the evidence, we think appellant got more than he was entitled to in the instructions actually given. Furthermore, in other instructions the trial court clearly stated that neither appellant could be convicted unless the jury found, beyond a reasonable doubt, that the killing was committed during the perpetration of the robbery, and this was both correct and sufficient. *State v. Garland,* 278 Md. 212 (1976).

## IV.

Appellant Owens contends that the trial court erred in refusing to propound certain questions on *voir dire.* The questions were posed in an attempt to establish whether the prospective jurors would apply proper legal principles. It is well-settled that the nature and extent of permissible inquiry on *voir dire* rests in the sound discretion of the trial court. *Twining v. State,* 234 Md. 97, 99 (1964). We find no abuse of that discretion here.

## *Scott*

## I.

Appellant Scott maintains he was convicted of a crime with which he was not charged. He states that the indictment against him charged that he "with ... deliberately premeditated malice aforethought and did kill and murder" the victim, and specified, in parentheses, "Art. 27, § 407 and Common Law," whereas he was found guilty of felony-murder, a violation of Article 27, *§ 410* of the Maryland Annotated Code. We think the assertion is meritless (*Brooks v. State,* 2 Md. App. 291 (1967)) but, at any rate, the record reflects that appellant made no motion at trial to dismiss the indictment on this ground, nor did he raise this issue in any other way below. Therefore, the question is not preserved for appeal. Maryland Rule 1085.

## II.

Appellant Scott also maintains that the evidence was insufficient to sustain his conviction for felony-murder. We shall answer this contention more fully later in this opinion. We shall simply note here that there was evidence from which the trier of fact could find that both appellants robbed the victim; that the victim was shot and killed during the robbery, and that the murder was done at the behest of both, to facilitate the robbery. This was sufficient to sustain his conviction, *Newton v. State,* 280 Md. 260 (1977), *McDowell v. State,* 31 Md. App. 652 (1976), *Brooks v. State,* 2 Md. App. 291 (1967). And this was so *regardless* whether Owens or Scott fired the fatal shots. *See Jackson v. State,* 286 Md. 430 (1979), *infra.*

### Owens and Scott

Appellants Owens and Scott raise the following issues jointly:

 I. The trial court abused its discretion in refusing each appellant's motion to sever.

 II. The trial court erred in admitting into evidence the extrajudicial statements of the co-defendants; admission violated appellants' Sixth Amendment constitutional right to confrontation (citing the so-called *Bruton* rule).

 III. Each appellant's extrajudicial statement should have been suppressed as it was obtained during a period of reasonable delay in violation of Maryland District Rule 723 a.

 IV. The trial court erred in refusing appellants' motions to dismiss for violation of Maryland Rule 746, as amended, and as interpreted by the Court of Appeals in *State v. Hicks,* 285 Md. 310 (1979).

76

## I. and II.

As separate but interrelated allegations of error, both appellants contend that the trial court erred in refusing to grant their motion for severance, and in admitting their extrajudicial statements into evidence. Appellants object to the admission of the statements even though they concede that the statements were introduced only as evidence against the declarant, and that the trial court gave an appropriate cautionary instruction to the jury. To reiterate, each appellant maintained that the other committed the murder. Their motions for severance were entered in an effort to avoid the impact of the introduction of both such statements at one trial. In this appeal they assert that the introduction of the statements violated their Sixth Amendment constitutional right to the confrontation of witnesses, as interpreted by the Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

The State relies on *Parker v. Randolph,* 442 U.S. 62, 99 S. Ct. 2132, 60 L. Ed. 2d 713 (1979), as authority for its position that *Bruton* did not require reversal of a defendant's conviction when the defendant himself confesses and his confession "interlocks with and supports" the confession of his co-defendant. But the Court's opinion in *Parker* is so dissonant that we fail to see how it can be cited as authority for anything. The case was argued before eight justices. Mr. Justice Rehnquist, speaking for a plurality of four justices, held that "admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." The plurality held that *Bruton* is inapplicable, and that it does not require the reversal of a defendant's conviction, when the defendant himself confesses and his confession "interlocks with and supports" the confession of his co-defendant. 442 U.S. 72-75, 99 S. Ct. 2139-40, 60 L. Ed. 2d 723-24. In a separate opinion Mr. Justice Blackmun concurred with the plurality's result, but only because he found the admission of the "interlocking"

confessions to be "harmless error." 442 U.S. 77-81, 99 S. Ct. 2141-43, 60 L. Ed. 2d 726-28. He stated that, rather than find *Bruton* inapplicable, he would follow the *Bruton* analysis and then determine whether the error was harmless beyond a reasonable doubt. Finally, Mr. Justice Stevens filed an opinion in dissent, which Justices Brennan and Marshall joined. 442 U.S. 81-91, 99 S. Ct. 2143-49, 60 L. Ed. 2d 728-34. Essentially, he agreed with Mr. Justice Blackmun that the *Bruton* analysis should be retained, but he found the admissions in the case to have been clearly harmful.

In response to this cacophony Judge Ridgely P. Melvin, Jr., speaking for this Court in *Earhart v. State,* 48 Md. App. 695 (1981), has stated:

> "In any event, until a majority of the Supreme Court makes up its mind in an opinion that affords us a binding precedent to follow, or until the Maryland Court of Appeals holds differently, we shall adopt the approach expressed by Justices Blackmun and Stevens in opposition to the *Parker* plurality view expressed by Justice Rehnquist. We do not think that the basic assumption of *Bruton* — that a jury cannot be expected to disregard an extrajudicial statement by a nontestifying codefendant that inculpates the defendant — is any less valid just because the defendant himself has also made an extrajudicial inculpatory statement.
>
> In other words, we hold that the rule of *Bruton* is not rendered inapplicable to protect the constitutional confrontation right of a defendant who complains of the admission in evidence of an extrajudicial statement of a nontestifying codefendant that inculpates the defendant in a crime for which they are being jointly tried by a jury — simply because the defendant has himself made an inculpatory extrajudicial statement. In such a situation, the admission into evidence of the

codefendant's statement would be constitutional error and warrant reversal unless under all the circumstances it can be said that the error was harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18 (1967)." (48 Md. App. at 706-07.)

Accordingly we hold that admission of both Scott's and Owens's confession in this joint trial violated the *Bruton* rule. Having so ruled we face the question of whether the *Bruton* error was harmless beyond a reasonable doubt.

As the State points out, the heart of appellants' argument is that, by blaming each other for the shooting, each had erected a successful defense, if believed, to the felony-murder charge. Appellants are mistaken in this.

The Court of Appeals recently expressed the essence of the felony-murder doctrine in *Jackson and Wells v. State,* 286 Md. 430 (1979), when it wrote, at 441-42:

> "The basic premise is that '[a] person is only criminally liable for what he has caused, that is, there must be a causal relationship between his act and the harm sustained for which he is prosecuted.' 1 Wharton's Criminal Law § 68 (Anderson, 1957). But
>
> [i]t is not essential to the existence of a causal relationship that the ultimate harm which has resulted was foreseen or intended by the actor. It is sufficient that the ultimate harm is one which a reasonable man would foresee as being reasonably related to the acts of the defendant. . . . It is not necessary that the defendant personally inflict harm upon the victim. . . . To constitute the cause of the harm, it is not necessary that the defendant's act be the sole reason for the realization of the harm which has been sustained by the victim. The defendant does not cease to be responsible for his otherwise criminal conduct because there

> were other conditions which contributed to the same result." [*Id.*]
>
> Clark and Marshall, *A Treatise on the Law of Crimes,* § 4.01, p. 209 (7th ed. (1967)), puts it this way: 'An accused is not responsible for the death of another, unless that fatal harm was caused by the defendant's act or omission, or by the behavior of persons whose actions are attributable or chargeable to the defendant.'
>
> Actual causation may be examined in terms of the *sine qua non.* R. Perkins, Criminal Law 688 (2d ed. 1969). 'In order that conduct be the actual cause of a particular result it is almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that "but for" the antecedent conduct the result would not have occurred.' W. La Fave & A. Scott, Handbook on Criminal Law 249 (1972)."

From this it is clear that appellants' own statements were sufficient to convict them *regardless* which of them the jury determined fired the fatal shots. We note, for example, that in *Jackson and Wells, supra, neither* Jackson nor Wells fired the lethal shots: the victim in that case was the appellants' hostage, and was accidentally shot and killed by a policeman who was attempting to apprehend the two men. Upon those facts the Court of Appeals reasoned that "but for" the action of Jackson and Wells — in committing the robbery, taking the hostage, resisting arrest and exposing the victim to police gunfire — the victim would not have been killed. Under these circumstances the Court of Appeals determined that the defendants were just as much the cause of the victim's death as if each had fired the fatal shot. The Court stated: "The causal relationship between acts of Jackson and Wells and the death . . . for which they were prosecuted is clear and direct." *Id.* Here, the line of causation, running from the armed robbery to the murder is even more clear and direct. We have no doubt that "but for" Owens's and Scott's decision to assault and rob the victim, that the decedent

would not have been killed. Nor do we think it was unreasonable that either Owens or Scott, or both, might decide to kill the victim in order to silence the only witness to the crime known to them. Whether the shooting was Owens's idea and act or whether it was Scott's, both appellants "set the wheels in motion"; their joint actions culminated in the victim's death, and both are equally responsible.

The case *sub judice* is similar to *Hodges v. Rose,* 570 F.2d 643 (6th Cir. 1978). Hodges and a co-defendant, Lewis, were convicted in a joint trial of murder in perpetration of rape. In separate written statements, which were introduced over objection at trial, both defendants admitted the rape, but each blamed the other for beating the victim and causing her death. Hodges did not testify; on appeal Lewis alleged a violation of his right under the confrontation clause of the Sixth Amendment. The Court applied the *Bruton* rule, established a violation of Lewis's Sixth Amendment rights, but then held the error harmless beyond a reasonable doubt. The Court stated, at 570 F.2d 648-49:

> "Of course, this evidence does not show *which* defendant delivered the fatal blows. In their statements, each defendant accuses the other of committing the murder, and Lewis claims to have attempted to dissuade Hodges from beating the woman. Under Tennessee law, however, an aider or abettor in a crime is responsible for the acts of his accomplice in pursuit of the criminal purpose. *See* Tenn. Code Ann. § 39-109. The jury was instructed by the trial court that 'a killing by one of a party, in the pursuit of an unlawful purpose involving the use of violence in which both are engaged, is the act of both who engaged in the unlawful purpose.' Based on this instruction, and evidence independent of the improperly admitted statement, we think that the average jury would conclude that Hodges and Lewis were both guilty of the murder regardless of which actually dealt the fatal blows.

The error in admitting the incriminating portions
of Hodges' statement as to Lewis was therefore
harmless beyond a reasonable doubt." (Footnotes
and citations omitted.)

We find this reasoning persuasive, and in accord with our
views in the case *sub judice.* The appellants' statements
were, for all practical purposes, identical. The mere fact that
each had blamed the other for the shooting was absolutely
inconsequential, since such accusations, even if believed by
the jury, were useless as a defense to felony-murder.
*Jackson, supra,* makes this point quite clear. Consequently,
we have no difficulty in holding that the *Bruton*-type error
in this case was harmless beyond a reasonable doubt.

Appellants also argue that *Mumford v. State,* 19 Md. App.
640 (1974), is controlling, and that it mandates reversal of
their convictions. *Mumford* does no such thing: it is
completely inapposite here. In that case the appellant (a 15
year old female) together with four youthful male compan-
ions "entered into an evening of burglary, robbery, larceny,
assault and terror in the Bishopville, Maryland area." *Id.* at
641. The third and final victim arrived home and entered her
garage while appellant *et alios* were burglarizing the home.
Two of Miss Mumford's cohorts raped and murdered the
victim. At appellant's trial the court refused Miss Mumford's
requested instruction to the jury that "[I]f you find that the
defendant [Mumford] could not have expected her
companions to commit a rape, . . . then you must find the
Defendant not guilty [of murder]." In *Mumford,* this Court
found the refusal to grant this instruction to be error. We
stated, at 643-44:

"Consequently, a killing, even if unintentional, by
one, in furtherance of or pursuant to the common
object for which they combine, extends criminal
liability for murder in the first degree to each and
every accomplice. The application of this doctrine,
however, is circumscribed by 'causation'
requirements which must be satisfied before the
felony-murder rule may be applied:

'There is no criminal liability on the part of the others when the homicide was a fresh and independent product of the mind of one of the confederates, outside of, or foreign to, the common design.' 1 Wharton, *Criminal Law and Procedure*, § 252, at 547 (Anderson ed. 1957).

In sum, there must be direct causal connection between the homicide and the felony. Something more than mere coincidence in time and place between the two must be shown; otherwise, the felony-murder rule will not be applicable." [1]

The State argued that the evidence was insufficient to support the requested instruction, but we disagreed, noting that the medical examiner's report and other evidence was sufficient to permit the jury to determine that the victim's death resulted from the rape. Therefore, we reasoned, "had the trial judge's instructions as to the felony-murder rule included a requirement of causal nexus between the underlying felony and the resultant homicide, the jury could have chosen not to believe that death occurred pursuant to the burglary, but rather from rape, fresh and independent of the common design." 19 Md. App. at 644. Here the instruction was given.

But in the case at bar the line of causation, running from the robbery to the murder, was quite clear and direct, and unbroken by any act "fresh and independent of the common design." Indeed, there was no evidence whatever to suggest a lack of causal connection between the homicide and the underlying felony. As we have noted, the evidence was quite to the contrary. Both appellants admitted participation in the robbery; and there was evidence that the murder was committed to facilitate that robbery. *Mumford, supra,* is therefore factually distinguishable from this case. Liability for murder here extends to both appellants, no matter which one fired the fatal shots.

---

1. For all intents and purposes, this is the same test given by the Court of Appeals in *Jackson, supra.*

This brings us to appellants' challenge to the joinder of their cases for trial. Relying upon *Bruton v. United States, supra,* appellants predicated their motions to sever upon allegations of infringement of their Sixth Amendment constitutional right of confrontation, attendant upon the introduction of their statements at trial. We have held the *Bruton* rule applicable here, but we have found the *Bruton* error harmless beyond a reasonable doubt. It follows therefore that any error in not granting the severance was harmless.[2] *Earhart v. State, supra.*

### III.

Appellants also contend their statements should have been excluded as a sanction for violation of Maryland District Rule 723 as construed by the Court of Appeals in *Johnson v. State,* 282 Md. 314 (1978). Subsection a of the rule provides:

> "A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than 24 hours after arrest. A charging document shall be filed promptly after arrest if not already filed."

And in *Johnson, supra,* the Court of Appeals stated, at 328-29:

> "We ... hold that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before

---

**2.** Appellants also cite Day v. State, 196 Md. 384 (1950), as authority for the proposition that joinder was improper here. In that case the two defendants robbed a trolley car and the conductor was killed. When the two were apprehended, each confessed to the robbery, but blamed the other for the killing. They were tried jointly and on appeal the Court of Appeals held the joinder improper. But, as the State points out, *Day* is distinguishable in that the Court's holding was based in large part upon the fact that the jury might exercise some discretion in sentencing either or both the defendants to death. *See Day, supra,* at 391-92. The jury played no such role in this case.

a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. A statement is automatically excludible if, at the time it was obtained from the defendant, he had not been produced before a commissioner for his initial appearance within the earlier of 24 hours after arrest or the first session of court following arrest, irrespective of the reason for the delay. Where, however, the delay in presentment falls within the outer limits established by M.D.R. 723 a, it is incumbent upon the trial court to determine whether the State has met its burden of showing that the delay was necessary under the circumstances of the particular case. Examples of necessary delay might include those required: . . . 4) to obtain information likely to be a significant aid in averting harm to persons or loss to property of substantial value; 5) to obtain relevant nontestimonial information likely to be significant in discovering the identity or location of other persons who may have been associated with the arrestee in the commission of the offense for which he was apprehended, or in preventing the loss, alteration or destruction of evidence relating to such crime. . . .

We note also that a truly spontaneous 'threshhold' [sic] confession or statement uttered at the time of arrest or shortly thereafter would not be excludible on the grounds that police subsequently failed to act diligently in complying with M.D.R. 723 a. In such cases there is manifestly no connection between the delay and the statement, and since police misconduct does not in any way contribute to the making of the confession, the exclusionary rule would logically not apply." (Citations omitted.)[3]

---

**3.** S.B. 862 was enacted in Laws 1981. It modified *Johnson* by providing that a defendant's confession may not be excluded *solely* because of a failure to comply with the rule of Court. The new statute is effective July 1, 1981.

The record reflects that appellants were arrested and questioned on the evening of March 3, 1980, but that they were not taken before a commissioner until the next morning. Appellants argue that under these circumstances the rule and *Johnson, supra,* require exclusion of their statements. We disagree. In the first place, appellants *were* taken before a commissioner within twenty-four hours; as a matter of fact, they were taken before a commissioner well within twenty-four hours after arrest. In the second place, and according to the uncontradicted evidence of the investigating officers, appellants were questioned in order to find the murder weapon; that is, to preserve physical evidence and to retrieve a dangerous and deadly weapon before it could be used to inflict further injury or death. And, in the third place, there was also testimony from the investigating officers that both appellants were "eager to confess" and blame each other for the shooting; the officers testified that appellants began confessing to the crimes before they reached the police station. Accordingly, we think the circumstances of this case place it within the exceptions mentioned by the Court in *Johnson, supra,* and we hold that appellants' confessions were properly admitted into evidence.

## IV.

Finally, appellants contend the trial court erred in refusing to grant their motions to dismiss based on a violation of Maryland Rule 746, as interpreted by the Court of Appeals in *State v. Hicks,* 285 Md. 310 (1979). Section a of the rule currently provides:

> "Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723."

And in *Hicks, supra,* the Court of Appeals held that the rule is mandatory, and that dismissal of the charges is the proper remedy for its violation, subject to certain exceptions. *See Hicks, supra,* at 335-36.

Appellants maintain that the 180-day period must date from their initial appearance in the district court, pursuant to Maryland District Rule 723. It does not; Maryland Rule 746 makes specific reference only to *Maryland Rule* 723, which applies to circuit court, not district court proceedings.[4]

> *Judgments affirmed.*
> *Appellants to pay the costs.*

---

**4.** Even if appellants were correct in this it would avail them nothing. The Court of Appeals has stated Hicks's ruling is purely prospective, and applicable "only to those pending cases where, as of our mandate in this case, there have been no appearances of counsel or first appearance of defendants pursuant to Rule 723," 285 Md. at 338. If appellants are correct, and their March 4, 1979, appearance is a "first appearance" pursuant to *Hicks,* it precedes the *Hicks* decision by almost four months.