JAMES HENRY GAYNOR *v.* STATE OF MARYLAND

[No. 1716, September Term, 1980.]

*Decided February 3, 1982.*

The cause was submitted on briefs to MASON, LISS and WILNER, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and

*Michael R. Braudes, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Richard B. Rosenblatt, Assistant Attorney General, William A. Swisher, State's Attorney* for *Baltimore City,* and *James Maggio, Assistant State's Attorney for Baltimore City,* for appellee.

MASON, J., delivered the opinion of the Court.

James Henry Gaynor, appellant, was convicted at a bench trial in the Criminal Court of Baltimore of robbery with a deadly weapon. He was committed to the custody of the Division of Correction for a term of five years. On appeal appellant contends, in essence, that the court erred in not granting his motion to suppress for the following reasons:

1. That his arrest was illegal because it was executed without a warrant and without exigent circumstances.

2. That his statement should have been suppressed because the conduct of the police between his arrest and confession deprived him of his right to assistance of counsel and privilege against self-incrimination.

The evidence adduced at the pretrial suppression hearing shows that at approximately 6:35 p.m. on 13 March 1980 a black man wearing a blue ski jacket robbed, at gunpoint, two employees of the Commercial Credit Company and seized $882.45 in cash and $1,988.00 in checks. Later, at approximately 10:30 p.m., the police received a telephone call from an employee of the Commercial Credit Company who stated that she had received a telephone call from another employee of the company, Gwendolyn Gaynor, who told her that her husband had committed the robbery. Soon thereafter Mrs. Gaynor, appellant's wife, called the police and reported that her husband had committed the robbery and was in their basement apartment at 2418 Madison Avenue with the money. Based on this information Detective Kinkead of the Robbery Squad and other officers immediately proceeded to 2418 Madison Avenue. Upon

arriving at the apartment the officers knocked on the front door for several minutes, but got no response. One of the officers went upstairs to another apartment to determine whether any of the neighbors knew the whereabouts of Mrs. Gaynor. In addition, the public telephone booth on the block was also checked. As a result of their knocking on the door for ten or fifteen minutes one of the small window panes on the door fell out and through this opening the officers could hear a small child crying. The officers announced their presence and inquired if Mr. or Mrs. Gaynor were at home. When no one answered Officer Kinkead reached inside the displaced window pane and unlatched the door. On entering the apartment the officers found an eight-year old female child sitting in a chair crying and two or more other children asleep in bed. After a short search of the premises the officers found appellant hiding in a corner with approximately $710.00 by his feet and a blue ski jacket nearby. Appellant was arrested and the money and ski jacket were seized. He was then transported to police headquarters where he confessed to the robbery.

## I.

Appellant, in reliance on the companion cases of *Payton v. New York* and *Riddick v. New York,* 445 U.S. 573 (1980) argues that because his arrest was without a warrant and without exigent circumstances it was illegal, and that the physical evidence seized, *i.e.,* the money and blue ski jacket, should have been suppressed. We disagree.

In *Payton* and *Riddick,* the Supreme Court held that a New York statute was unconstitutional which authorized police officers to enter a private residence without a warrant to make a routine felony arrest. The Court, however, specifically noted:

> Although it is arguable that the warrantless entry to effect Payton's arrest might have been justified by exigent circumstances, none of the New York courts relied on any such justification.

\* \* \*

> Accordingly, we have no occasion to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances', that would justify a warrantless entry into a home for the purpose of either arrest or search. *Id.* at 583.

As *Payton* and *Riddick* make clear, the question of exigent circumstances was not presented or considered. Therefore, these cases are inapposite.

The State argues, and we agree, that inasmuch as there was ample probable cause and exigent circumstances to effect appellant's arrest, the seizure of the money and ski jacket, which were in plain view, was legal. As to evidence of probable cause, an employee of Commercial Credit Company notified the police that another employee, Mrs. Gaynor, told her that her husband, the appellant, had committed the robbery. In addition, appellant's wife telephoned the police and not only told them that appellant committed the robbery, but also told them where her husband could be located with the money.

As to exigent circumstances to justify a warrantless entry into a house to arrest a suspected felon, the Court of Appeals in *Nilson v. State,* 272 Md. 179 (1974) enumerated the following considerations material to assessing the existence of exigent circumstances:

1. That a grave offense is involved;
2. That the suspect is reasonably believed to be armed;
3. That there exists more than minimum probable cause based upon reasonably trustworthy information to believe that the suspect committed the crime involved;
4. That there is strong reason to believe that the suspect is in the premises being entered;
5. That there is a likelihood that the suspect will escape if not swiftly apprehended;

6. That reasonableness of police attitude and conduct is demonstrated through circumstances demonstrating a peaceable entry.

*See also Cook v. State,* 35 Md. App. 430 (1977), *aff'd,* 281 Md. 665 (1978).

We think it clear that virtually all of the factors enumerated in *Nilson v. State, supra,* are present in this case. The offense in question was a crime of violence; a weapon was used, and there was a reasonable probability to believe that appellant was still armed. There was a clear showing of probable cause that appellant had committed the crime, there was a strong reason to believe that he was on the premises, and there was the likelihood that he would escape if not swiftly apprehended. Moreover, before entering the apartment the police identified themselves, and their entry, under the circumstances, was made peaceably. When the officer was questioned regarding the reason he entered the apartment after he received no response from knocking on the door, he replied:

> ". . . At that point fearing for the children's safety as well as Mrs. Gaynor, being that she had called in on her husband and —
>
> MR. DEISE: Objection.
>
> THE COURT: Overruled.
>
> THE WITNESS: And also knowing that the hold-up was committed with a handgun, we felt as though there may have been some danger or some harm may have come to Mrs. Gaynor or her children and so we reached inside — I actually reached inside and opened the door and we entered the apartment."

Although a warrantless and nonconsensual entry into a suspect's house to make a routine felony arrest is presumptively unreasonable, the warrantless entry into appellant's apartment was justified because of the existence of probable cause and exigent circumstances. Accordingly, appellant's motion to suppress the property seized as a result thereof was properly denied.

## II.

After appellant was arrested and transported to police headquarters he was asked certain routine questions for booking purposes. Thereafter, Officer Kinkead began to read appellant his *Miranda* rights. Before the officer could complete the *Miranda* litany appellant interrupted him and stated that it was unnecessary "to go through all this." Appellant then confessed to the robbery and told the officers where the stolen checks could be found. During cross-examination of Officer Kinkead the following colloquy occurred:

> Q. [By defense counsel] As I understand you, Detective — one final question — you did not — Mr. Gaynor rather did not make his statement to you until you had advised him of the information you had received from his wife, is that correct?
>
> A. [The witness] That's correct. I believe it was in response to him saying how did you know I was there — something like that. I don't recall exactly.
>
> THE COURT: I was what?
>
> THE WITNESS: Excuse me. I said — I believe what I said was in response to his saying, well, how did you know I was there. I don't even recall his words verbatim, but I know that was even how I touched on that at all, because he had said something close to that and I just told him we got a call from your wife telling us you were there and that was it.
>
> Q. And that's when he admitted everything to you?
>
> A. No, that's not when he admitted everything to us.
>
> Q. When did he admit everything to you?
>
> A. Why?
>
> Q. When?
>
> A. When?
>
> Q. Yes.
>
> A. Shortly thereafter, I'd imagine. Sometime

after that because it was the same night or same morning at that time.

Q. Do you recall what time it was when he actually admitted this to you — when he gave you the statement admitting to where the checks were and where the gun was?

A. I believe I told you before that — I'd say ten to fifteen minutes after when I got him in there — after 12:00. I began to read the rights and at that time he told me that it's no need for that. So, you can approximate that it was anywhere from ten to fifteen minutes thereafter.

Relying on *Brewer v. Williams,* 430 U.S. 387 (1977) appellant argues:

Similarly, in the present case Kinkead by telling appellant in effect that the State had overwhelming evidence against him effectively informed him that he had nothing to lose by confessing. This impression was certainly not weakened by then putting appellant through 'routine booking procedures', also prior to the attempted delivery of *Miranda* warnings. It is not surprising that appellant under these circumstances shrugged off Kinkead's attempt to read him the *Miranda* form and said in effect 'Let's get it over with.'

In sum, appellant submits that the detective's statement amounted to custodial interrogation and that the admission of the resulting confession violated his right to counsel and privilege against self-incrimination.

Appellant's reliance on *Brewer v. Williams, supra,* is completely misplaced. There, the defendant had obtained an attorney who advised him to remain silent and who had also advised the police not to interrogate him regarding the disappearance of a 10 year old child. Notwithstanding this advice, the police deliberately elicited incriminating evidence from the defendant by urging him to point out the

location of the girl's body because adverse weather conditions would make it impossible to find it at a later date, and because her parents were entitled to give her a "Christian burial." In the present case appellant's confession was not the product of interrogation nor was his right to counsel or his privilege against self-incrimination violated. The fact that the police, in response to appellant's inquiry, told him that they knew where he was because they had received a telephone call from his wife informing them of his whereabouts, was not tantamount to, nor the functional equivalent of, interrogation within the meaning of *Miranda*. *See Edwards v. Arizona,* 451 U.S. 477, 68 L.Ed. 2d 378 (1981); *Rhode Island v. Innis,* 446 U.S. 291 (1980); *Vines v. State,* 285 Md. 369 (1979); *Bryant v. State,* 49 Md. App. 72 (1981). Assuming *arguendo,* however, this amounts to an interrogation, we find the appellant has waived his *Miranda* rights. *See North Carolina v. Butler,* 441 U.S. 369, 60 L.Ed. 2d 286 (1979). For the reasons herein stated we affirm.

*Judgment affirmed.*
*Costs to be paid by appellant.*